# EXHIBIT B

FILED
8/30/2022
Timothy W Fitzgerald
Spokane County Clerk

STATE OF WASHINGTON
SPOKANE COUNTY SUPERIOR COURT

| | |
|---|---|
| NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,<br><br>              *Plaintiff,*<br><br>      v.<br><br>HOWARD SCHULTZ, ET AL.,<br><br>              *Defendant.* | 22-2-02945-32<br><br>COMPLAINT<br>JURY DEMAND |

Plaintiff alleges the following based upon personal knowledge as to the Plaintiff and the Plaintiff's own acts, and upon information and belief as to all other allegations, based on investigation of counsel. This investigation included, *inter alia*, a review of public statements and disclosure materials prepared by the Defendants in this action (the "Defendants") and by those working under the direction of the Defendants. The Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. INTRODUCTION

1. The individual Defendants are exactly the kind of people who should (and did) know better – sophisticated businesspeople, who, together, run Starbucks Corporation ("Starbucks"), the world's largest chain of coffeehouses.

2. Despite their knowledge and sophistication – or perhaps because of it – the individual Defendants adopted for Starbucks a collection of seven (7) policies, which, between them: (a) require Starbucks to discriminate based on race and facilitate Starbucks' active discrimination based on race in its employment decisions (including its hiring, firing, and promotions); (b) require Starbucks to discriminate in its compensation of its officers based on the race of their

COMPLAINT—JURY DEMAND - 1

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    workforce; and (c) discriminate in its contracting with suppliers and media companies, based

2    on the race of potential vendors' ownership.

3  3.  Starbucks, acting through its officers and directors, crafted and publicized these policies with

4    fanfare, preening over the supposed moral virtue their adoption signaled. The individual

5    Defendants took these actions despite knowing of a glaring, inconvenient fact: the policies they

6    so trumpeted flagrantly violate a wide array of state and federal civil rights laws. The individual

7    Defendants continue to have Starbucks pursue these policies and brag of pursuing them

8    through its corporate website despite that knowledge.

9  4.  The Plaintiff warned the individual Defendants of both the policies' illegality and of the

10    resulting exposure for Starbucks that the individual Defendants' actions had created. The

11    Plaintiff warned that the policies invited a nearly endless collection of meritorious lawsuits,

12    bringable by a nearly innumerable collection of private and public claimants, each of whom

13    would potentially be entitled by statute to collect from Starbucks uncapped, punitive damages.

14    The Plaintiff demanded that the individual Defendants take action to address these risks, that

15    they immediately, publicly retract the policies, and that they return Starbucks to compliance

16    with American civil rights law.

17  5.  On July 22, 2022, the individual Defendants – acting through counsel – responded in writing

18    that Starbucks would take no relevant action to correct course and reduce the exposure they

19    had created for it and its shareholders.

20  6.  By adopting, implementing, and retaining for Starbucks these policies, with knowledge of their

21    illegality, the individual Defendants endangered Starbucks and the interests of all its

22    shareholders in Starbucks. They violated their fiduciary obligations to all Starbucks'

23    shareholders and they continue to violate those duties, with full knowledge of the resulting

24    risks they have imposed on their investors. More, they did so (and continue to do so) outside

25    their corporate authority to lawfully pursue business on behalf of Starbucks' owners. And why

26    do they do so? Because it benefits them personally to pose as virtuous advocates of "Inclusion,

27

COMPLAINT—JURY DEMAND - 2

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 15 -

Diversity, and Equity," even if it harms the company and its owners – a classic example of (admittedly non-pecuniary) self-dealing.

7. They must be stopped from intentionally, systematically violating America's civil rights laws, from wasting the value of Starbucks to its owners, and from diverting the shareholders' corporate resources to their personal use in buying themselves social-credit.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to RCW 4.12.025.

9. Starbucks conducts business in Spokane County. This Court has personal jurisdiction over the parties and venue is proper in Spokane County pursuant to RCW 4.12.020.

## III. PARTIES

### A. The Plaintiff

10. The National Center for Public Policy Research is a Delaware non-profit corporation, with its principal place of business in Washington, DC. The National Center for Public Policy Research is, and has long been, a shareholder of Starbucks.

### B. The Nominal Corporate Defendant

11. Starbucks is a Washington Corporation with a principal place of business in Seattle, Washington.

### C. Starbucks' Officers and Directors

12. At the time of the Demand Letter, Kevin Johnson was the President of Starbucks and a Director of Starbucks. Mr. Johnson is a resident of Washington State.

13. Howard Schultz is the Interim CEO of Starbucks and a Director of Starbucks. Mr. Schultz is a resident of Washington State.

14. At the time of the Demand Letter, John Culver was the Group President of Starbucks, North America and the COO of Starbucks. Mr. Culver is a resident of Washington State.

15. Rachel Ruggeri is the Executive Vice President and CFO of Starbucks. Ms. Ruggeri is a resident of Washington State.

COMPLAINT—JURY DEMAND - 3

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 16 -

16. At the time of the Demand Letter, Ted Adams was the Senior Vice President of Starbucks for Government Affairs, Public Policy & Community Impact. Mr. Adams is a resident of Washington State.

17. Tyson Avery is a Senior Vice President of Starbucks, as well as its Deputy General Counsel and Chief Ethics and Compliance Officer. Mr. Avery is a resident of Washington State.

18. Kelly Bengston is the Senior Vice President of Starbucks for Global Sourcing and its Chief Procurement Officer. Ms. Bengston is a resident of Washington State.

19. Brady Brewer is an Executive Vice President of Starbucks and its Chief Marketing Officer. Mr. Brewer is a resident of Washington State.

20. Dennis Brockman is a Senior Vice President of Starbucks and its Chief Inclusion & Diversity Officer. Mr. Brockman is a resident of Washington State.

21. George Dowdie is the Executive Vice President of Starbucks for Global Supply Chain. Mr. Dowdie is a resident of Washington State.

22. Jen Frisch is the Senior Vice President of Starbucks for Partner Resources, U.S. Retail, Licensed Stores & Operations Services. Ms. Frisch is a resident of Washington State.

23. Shannon Garcia is the Senior Vice President of Starbucks for U.S. Operations. Ms. Garcia is a resident of Washington State.

24. At the time of the Demand Letter, Rachel Gonzalez was an Executive Vice President of Starbucks and its General Counsel. Ms. Gonzalez is a resident of Washington State.

25. Zabrina Jenkins is a Senior Vice President of Starbucks and its Deputy General Counsel. Ms. Jenkins is a resident of Washington State.

26. A.J. Jones, II is the Senior Vice President of Starbucks for Global Communications and Public Affairs. Mr. Jones is a resident of Washington State.

27. Sara Kelly is the Senior Vice President of Starbucks for Talent & Partner Experience. Ms. Kelly is a resident of Washington State.

28. Jennifer Kraft is Starbucks' Corporate Secretary, as well as a Senior Vice President of Starbucks and its Deputy General Counsel. Ms. Kraft is a resident of Washington State.

COMPLAINT—JURY DEMAND - 4

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

29. Angela Lis is the Starbucks' Chief Partner Officer and its Executive Vice President of Partner Resources. Ms. Lis is a resident of Washington State.

30. Carl Mount is the Senior Vice President of Starbucks for Logistics & U.S. Retail Supply Chain. Mr. Mount is a resident of Washington State.

31. Denise Nelsen is a Senior Vice President of Starbucks for U.S. Operations. Ms. Nelsen is a resident of Washington State.

32. Anju Rao is the Senior Vice President of Starbucks for Global Safety, Quality, & Regulations. Ms. Rao is a resident of Washington State.

33. Kyndra Russell is the Senior Vice President of Starbucks for Marketing. Ms. Russell is a resident of Washington State.

34. Debbie Stroud is a Senior Vice President of Starbucks for U.S. Operations. Ms. Stroud is a resident of Washington State.

35. At the time of the Demand Letter, Rosann Williams was an Executive Vice President of Starbucks and the President of Starbucks North America. Ms. Williams is a resident of Washington State.

36. Gina Woods is the Executive Vice President of Starbucks for Public Affairs and Social Impact. Ms. Woods is a resident of Washington State.

37. Ms. Woods, together with Mr. Johnson, Mr. Schultz, Mr. Culver, Ms. Ruggeri, Mr. Adams, Mr. Avery, Ms. Bengston, Mr. Brewer, Mr. Brockman, Mr. Dowdie, Ms. Frisch, Ms. Garcia, Ms. Gonzalez, Ms. Jenkins, Mr. Jones, Ms. Kelly, Ms. Kraft, Ms. Lis, Mr. Mount, Ms. Nelsen, Ms. Rao, Ms. Russell, Ms. Stroud, and Ms. Williams, are hereafter referred to as the "Starbucks Officers."

38. Mellody Hobson is the Board Chairman of Starbucks. Ms. Hobson is a resident of California.

39. Richard E. Allison, Jr. is a Director of Starbucks. Mr. Allison is a resident of Michigan.

40. Andrew Campion is a Director of Starbucks. Mr. Campion is a resident of Oregon.

41. Mary N. Dillon is a Director of Starbucks. Ms. Dillon is a resident of Illinois.

COMPLAINT—JURY DEMAND - 5

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 18 -

42. Isabel Ge Mahe is a Director of Starbucks. Ms. Mahe is a citizen of the People's Republic of China.

43. Jorgen Vig Knudstorp is a Director of Starbucks. Mr. Knudstorp is a subject of the Kingdom of Denmark.

44. Satya Nadella is a Director of Starbucks. Mr. Nadella is a resident of Washington State.

45. Joshua Cooper Ramo is a Director of Starbucks. Mr. Ramo is a resident of New York State.

46. Clara Shih is a Director of Starbucks. Ms. Shih is a resident of California.

47. Javier G. Teruel is a Director of Starbucks. Mr. Teruel is a citizen of Mexico.

48. Mr. Teruel, together with Mr. Johnson, Mr. Schultz, Ms. Hobson, Mr. Allison, Mr. Campion, Ms. Dillon, Ms. Mahe, Mr. Knudstorp, Mr. Nadella, Mr. Ramo, and Ms. Shih, are hereafter referred to as the "Starbucks Directors."

49. The Starbucks Directors and the Starbucks Officers are hereafter jointly referred to as the "Starbucks D&O."

## IV. FACTS

**A. Adoption of the Policies.**

50. According to the "Starbucks Stories" section of Starbucks' own corporate website, in October 2020, Starbucks announced a series of policies to realize its "commitment to Inclusion, Diversity, and Equity[.]" Avoiding any ambiguity over whether these commitments were actually policy or merely projections of the likely results from ongoing, non-discriminatory trends, the Commitment Page expressly "committed" Starbucks "to taking further actions toward tangible and lasting change" in its corporate structure and behavior.

51. Among the policies and concrete steps announced on the Commitment Page, Starbucks announced its: (a) adoption of the "goals" of "achieving BIPOC representation of at least 30% at all corporate levels and at least 40% at all retail and manufacturing roles by 2025" ("Policy 1"); (b) commitment to "complet[ion of] the roll out of an analytics tool that will provide leaders with visibility to current diverse representation relative to Starbucks representation goals" ("Policy 2") (c) "incorporat[ion of] measurements focused on building inclusive and

COMPLAINT—JURY DEMAND - 6

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 19 -

diverse teams in to [Starbucks'] executive compensation programs beginning in FY21" ("Policy 3"); and (d) entry into "the Board Diversity Action Alliance to act alongside peer companies as we are committed to representation of racially and ethnically diverse directors on corporate boards of directors" ("Policy 4"). It is worth noting that the Commitment Page's assertion that the Board Diversity Action Alliance seeks "representation of racially and ethnically diverse directors on corporate boards of directors" materially misstates the actual commitment made by all Board Diversity Action Alliance signatories – they do not commit to seek racial or ethnic diversity, they "commit to: 1. Increase the number of Black directors[.]" The Commitment Page also announced that Starbucks would "continue to publicly share our Inclusion and Diversity commitments, goals, and progress through annual reporting."

52. Almost as promised, in January 2022, Starbucks provided precisely such an update. Again, Starbucks left no ambiguity as to the materiality of the update's contents, as the Update Page quotes Starbucks Chief Global Inclusion and Diversity Officer Dennis Brockman as stating that "Through intentionality, transparency and accountability, I believe we will continue to make substantial change on behalf of all our [employees]."

53. What are those "substantial changes" the Update Page announced Starbucks would continue "through intentionality" to pursue? The Update Page reiterated that Policy 3 had been effectuated and "continues to hold accountab[le] the highest levels of the organization" to "the building of inclusive and diverse team building[.]" It further disclosed: (a) the existence of the Starbucks Supplier Diversity and Inclusion program[, which] drives inclusion of qualified businesses with a focus on suppliers of all sizes and categories" – according to the Update Page, Starbucks has "announc[ed that] it will increase its spend with diverse suppliers" from $800 million "to $1.5 billion by 2030" ("Policy 5"); (b) "a commitment in the next year to allocating 15 percent of [Starbucks'] advertising budget with minority-owned and targeted media companies" ("Policy 6"); and (c) the "launch [of] a Leadership Accelerator Program" that "will focus on empowering [employee] capacity for self-promotion, advocacy and career navigation" to facilitate entry into "the leadership pipeline at Starbucks[,]" but which Starbucks

COMPLAINT—JURY DEMAND - 7

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

will make available initially only to its "BIPOC [employees] at the individual contributor level" ("Policy 7" and, together with Policies 1, 2, 3, 4, 5, and 6, the "Policies").

**B. Warning of Illegality**

54. On March 25, 2022, the American Civil Rights ("ACR") Project published an open letter to the Starbucks D&O (sent on behalf of the Plaintiff), which warned of the risks to which the Policies exposed Starbucks and its shareholders (the "Demand Letter"). The ACR Project simultaneously sent the Demand Letter on March 25, 2022 to the Starbucks D&O by email (as instructed by the Starbucks investor website) and First-Class, Certified U.S. Mail, Return Receipt Requested.

55. On March 31, 2022, on behalf of all the Defendants, Starbucks' authorized agent accepted delivery of the hard-copy of the Demand Letter sent through certified mail.

56. The Demand Letter warned that Policies 1, 4, 5, 6, and 7 expressly compel Starbucks to make contracting decisions based on race, that Policy 2 has no conceivable use other than to advance Starbucks' race-based decisionmaking in contracting, that Policy 3 makes Starbucks' executive compensation dependent on the demonstrated proof that such executives have made race-based contracting decisions, and that Policy 3, itself, constitutes indirect race-based contracting, through its differential treatment of management, depending on the race of their teams.

    **1.    Warning Concerning § 1981**

57. The Demand Letter warned that the Policies – through their express commitments to racial discrimination in contracting – violated any number of state and federal laws.

58. The Demand Letter highlighted that Congress had prohibited anyone from engaging in this kind of discrimination in private contracting based on race through the Civil Rights Act of 1866 (in the provision now codified at 42 U.S.C. § 1981), even quoting Justice Ginsburg's conclusion in her *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media* opinion, 104 S. Ct. 1009, 1020 (2020), that § 1981 "is a 'sweeping' law designed to 'break down *all* discrimination between black and white men' regarding 'basic civil rights' ' like the entry into contracts." The

COMPLAINT—JURY DEMAND - 8

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 21 -

1     Demand Letter cited to authority establishing both that § 1981 bars discriminatory contracting

2     with vendors based on the race of their ownership and personnel, and that § 1981 applies

3     without regard to what race the offending party excludes from contracting.

4 59. The Demand Letter drew these matters together, warning that each of the Policies facially

5     commit Starbucks to violating § 1981.

6         **2.**     **Warning Concerning Title VII**

7 60. The Demand Letter further warned that, through Title VII of the Civil Rights Act of 1964,

8     Congress had banned discrimination based on race and other immutable characteristics in

9     employment. As Justice Gorsuch explained for the Supreme Court, "Title VII [ ] command[s]

10     that it is 'unlawful … for an employer to fail or refuse to hire or to discharge any individual,

11     or otherwise to discriminate against any individual with respect to his compensation, terms,

12     conditions, or privileges of employment, because of such individual's race, color, religion, sex,

13     or national origin[.]" *Bostock v. Clayton County, Ga.*, 140 S.Ct. 1731, 1738 (2020); citing 42

14     U.S.C. § 2000e-2(a)(1). "So long as the plaintiff's classification in any such category is "one

15     but-for cause of that decision, that is enough to trigger the law."

16 61. The Demand Letter drew these matters together, warning that:

17         a. Policy 1, by promising to hire and promote based on race, appeared to facially

18            violate Title VII.

19         b. Policy 7, in creating a promotional aid made available based on race, without any

20            of the mitigating factors held material by the Supreme Court in *United Steelworkers*

21            *v. Weber*,[1] appeared to do the same.

22         c. Policy 3 appeared to violate Title VII, both by incentivizing officers to violate Title

23            VII in hiring and promotional decisions, and by discriminating based on the race of

24            officers' workforces in setting officers' compensation levels.

25

26

27

---

[1] 443 U.S. 193 (1979).

COMPLAINT—JURY DEMAND - 9

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 22 -**

d.  Policy 4 appeared to violate Title VII as well, as – for the purposes of Title VII – a board member can constitute an employee, whose hiring or firing may yield liability. *Frederick v. UBCJA Local 926,* 558 Fed. Appx. 83, 86 (2d Cir. 2014) (acknowledging that board members could constitute employees for the purposes of Title VII and remanding for further proceedings). Accordingly, the Demand Letter warned that, when Starbucks' board nominates (or when its shareholders' act on that nomination to elect) a slate of directors chosen based on candidates' races (as Policy 4 requires), they will invite charges that they have hired and failed to hire individuals as board members "because of such individual's" race, in further violation of Title VII.

**3.    Warning Concerning State Laws**

62. The Demand Letter warned that the Policies also violated the laws of numerous states. It warned that several states have their own non-discrimination statutes prohibiting private discrimination in employment and other contracting based on race, sex, and gender (and often on other bases as well). It cited, specifically, to the New Jersey Law Against Discrimination as a state-level enactment facially violated by the Policies,[2] while warning more generally that Starbucks' operations in every state left it susceptible to litigation in every state that has enacted such a state-level civil rights law.

**4.    Warning Concerning Exposure to Litigation and Material Liability**

63. The Demand Letter warned that the Policies not only invited litigation through facially violating this wide collection of state and federal laws, but issued that invitation to an

---

[2] E.g., N.J.S.A. § 10:5-12(l) ("It shall be … an unlawful discrimination: … l. for any person to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any person on the basis of the race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status… of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.")

COMPLAINT—JURY DEMAND - 10

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 23 -

extraordinarily broad set of actors. It highlighted by way of example, without suggesting the listing to be comprehensive, that:

> Every individual discriminated against under Policies 1, 3, 4, and 7, every supplier discriminated against under Policy 5, and every media company discriminated against under Policy 6 have standing to bring direct actions against Starbucks under federal law today or at a future time of their choosing. With details varying by state, all such individuals have the right – either today, or at a future date of their choosing – to file administrative enforcement actions, state law claims, or both against Starbucks because of the Policies.

It continued to warn that:

> The U.S. Department of Justice is empowered to enforce both § 1981 and Title VII through direct action. So are state governments, either through actions by state Attorney Generals or by local prosecutors. Any of these authorities could bring suit against Starbucks today or at a future date of their choosing.

And it warned that these threats were not mutually exclusive, as:

> …no law would prevent *many* such individual or authorities from bringing such actions. And, given the availability of differing state laws, should many such parties bring such actions, there would be no vehicle available to Starbucks to compel their joint administration. The Policies thus invite not only litigation against many, many parties, but litigation against many, many parties in many, many forums.

COMPLAINT—JURY DEMAND - 11

*NCPPR v. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 24 -

### 5.    Formal Demand

64. The Demand Letter concluded by demanding that the Starbucks D&O "immediately, publicly retract the Policies in their entirety and return to compliance with American Civil Rights law."

65. Accordingly, by no later than March 25, 2022, Starbucks and all of the Starbucks D&O knew that the Policies were illegal and exposed Starbucks to material risks of litigation and liability.

**C. Response to Demand**

66. On May 2, 2022, Starbucks and the Starbucks D&O, acting through Starbucks' Senior Vice President, Deputy General Counsel, and Corporate Secretary Jennifer Kraft, confirmed in writing the Defendants' receipt of the Demand Letter and requested proof of the Plaintiff's stock ownership. Ms. Kraft contemporaneously assured the Plaintiff that "[t]he demand letter and proof of stock ownership will be provided to Starbucks Board of Directors for its consideration at its next regularly scheduled meeting" and promised that the Defendants would "keep you advised of further developments."

67. On May 4, 2022, the ACR Project provided Ms. Kraft that proof of the National Center for Public Policy Research's Starbucks stock ownership.

68. Subsequently, on July 22, 2022, acting through Ms. Kraft as their counsel, the individual Defendants formally responded to the Demand Letter. Ms. Kraft's letter explained that the Starbucks Directors had "determined that it is not in the best interest of Starbucks to accept the Demand and retract the Policies, and accordingly" the Starbucks directors had "rejected the Demand[.]"

69. Starbucks has thus already violated state and federal non-discrimination laws, continues to do so, and will continue to do so unless enjoined by this Court.

70. As set out above (and below), each person and entity against which Starbucks has wrongly discriminated could sue Starbucks for that discrimination (as could a wide array of governmental enforcers).  Unless Starbucks is enjoined from further discriminatory acts, the roster of potential plaintiffs will only grow.

COMPLAINT—JURY DEMAND - 12

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 25 -

71. Starbucks' ongoing conduct, and that of the Starbucks' D&O, creates a present and increasing risk to Plaintiff that the value of its ownership in Starbucks will be wasted as Starbucks faces unneeded litigation seeking compensation from Starbucks for its discriminatory conduct.

**V.  CAUSE OF ACTION**

**DECLARATORY JUDGMENT:**

**THE POLICIES VIOLATE 42 U.S.C. § 1981**

72. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

73. This Count is brought pursuant to RCW 7.24.010 against the Defendants.

74. An actual, genuine controversy exists between the parties concerning the legality of the Policies and Starbucks' liability resulting from the Starbucks' D&O's adoption, implementation, and retention of the Policies.

75. 42 U.S.C. § 1981 includes the current codification of a core provision of the Civil Rights Act of 1866. As amended, § 1981 provides the following:

> (a)    Statement of Equal Rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts… as is enjoyed by white citizens…."

> (b)    "Make and Enforce Contracts Defined". For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

COMPLAINT—JURY DEMAND - 13

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 26 -

(c) Protection Against Impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

76. This language prohibits any racial discrimination in the making, performance, and enforcement of contracts. The race of the victim of such discrimination is immaterial to whether racial discrimination in contracting violates § 1981.

77. Section 1981's ban is violated wherever a party's covered contracting behavior would have been different but for its counterparty's race.

78. This ban covers parties' refusal to extend to potential counterparties contractual offers because of those counterparties' races.

79. Entities can violate § 1981 by discriminating against enterprises based on the race of their owners or personnel, just as entities can violate § 1981 by discriminating against individuals because of their race.

80. The Policies nonetheless obligate Starbucks to base its contracting decisions on race.

81. Policy 1 adopts race-based "goals" for Starbucks' allocation of jobs by 2025 at all corporate levels. Policy 1, thus, requires race-discrimination in Starbucks' hiring, firing, and promotions at all corporate levels.

82. Policy 2 serves no conceivable purpose other than to facilitate decisionmakers' race-based choices in employment contracting (specifically, in the making of hiring, firing, and promotional decisions).

83. Policy 7 expressly creates a program providing "career navigation" advice to Starbucks employees, in order to facilitate their entry into "the leadership pipeline at Starbucks" and excludes employees from that program based on their race.

84. Policy 3 both embeds in corporate policy an inducement for particular Starbucks' employees to engage in race-based hiring and promotions (so barring any contention that individual decisions undertaken to achieve the "goals" set by Policy 1 were rogue acts) and, in turn,

COMPLAINT—JURY DEMAND - 14

*NCPPR v. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 27 -

1    discriminates against executives in setting their compensation, based on the racial mix of their

2    workforces.

3    85. Policy 4 requires Starbucks' Directors to discriminate based on race in nominating prospective

4    future Directors.

5    86. Policy 5 requires Starbucks to shift $700 million of supplier contracts to "diverse suppliers" to

6    be chosen based on the race of their ownership. Necessarily, Policy 5 requires Starbucks to

7    refuse to contract with suppliers for these $700 million worth of supplies based on the race of

8    their ownership.

9    87. Policy 6 requires Starbucks to "allocate 15 percent" of its advertising budget to "minority-

10    owned and targeted media companies." Accordingly, Policy 6 doesn't even leave open the

11    possibility that this alteration will result merely from an expansion of Starbucks' advertising

12    spend – instead, affirmatively, it requires the shifting of existing dollars away from venders

13    because of the race of their ownership, as necessary to achieve a quota-like racial allocation of

14    Starbucks' advertising expenditures.

15    88. *All* of these Policies facially violate § 1981. They expressly require the "but-for" exclusion of

16    individuals and businesses from contracts because of their race (where applied to individuals)

17    and the race of their ownership or workforce (where applied to corporations or executives).

18    89. The Plaintiff therefore asks the Court to declare that these Policies violate 42 U.S.C. § 1981.

## VI.  CAUSE OF ACTION

### DECLARATORY JUDGMENT:

### POLICIES 1, 3, 4, AND 7 VIOLATE TITLE VII

22    90. The Plaintiff hereby incorporates by reference the allegations contained in the preceding

23    paragraphs of this Complaint.

24    91. This Count is brought pursuant to RCW 7.24.010 against the Defendants.

25    92. "Title VII [ ] command[s] that it is 'unlawful … for an employer to fail or refuse to hire or to

26    discharge any individual, or otherwise to discriminate against any individual with respect to

27    his compensation, terms, conditions, or privileges of employment, because of such individual's

COMPLAINT—JURY DEMAND - 15

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    race, color, religion, sex, or national origin[.]"[3] "So long as the plaintiff's" identification in any

2    such factor is "one but-for cause of that decision, that is enough to trigger the law."[4]

3 93. Policies 1, 3, 4, and 7 facially violate that command, by making race a "but-for" cause of

4    Starbucks' employment decisions.

5 94. Specifically, Policy 1 makes race a "but-for" cause of Starbucks' hiring and promotional

6    decisions at all levels.

7 95. Specifically, Policy 3 makes the race of those comprising an executive's workforce the "but-

8    for" cause of Starbucks' compensation paid to that executive. Policy 3 also incentivizes

9    executives to discriminate based on race in their hiring, firing, and promotional decisions, on

10    Starbucks' behalf (so taking ownership for the corporation of any such racial discrimination

11    and dispelling any ambiguity in the corporation's responsibility for any racial discrimination

12    undertaken to meet Policy 1).

13 96. Policy 4 requires Starbucks' Directors to make candidates' race a "but-for" cause of their

14    inclusion or exclusion from a slate of nominations for future directorships.

15 97. Policy 7 makes employees' race a "but-for" cause of the terms, conditions, and privileges of

16    employment Starbucks extends them, in the affirmative service of future racial discrimination

17    in Starbucks' promotions of Starbucks' employees.

18 98. *All* of these policies facially violate Title VII. They expressly impose "but-for" causation on

19    Starbucks' treatment of individuals as they are considered for hiring or firing, as their

20    compensation is determined, and as they seek and obtain promotions.

21 99. The Plaintiff therefore asks the Court to declare that these Policies violate Title VII.

---

[3] *Bostock v. Clayton County, Ga.*, 140 S.Ct. 1731, 1738 (2020); citing 42 U.S.C. § 2000e-2(a)(1).
[4] *Id.* (citing *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 350 (2013).

COMPLAINT—JURY DEMAND - 16

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 29 -

## VII.  CAUSE OF ACTION

### DECLARATORY JUDGMENT:

### POLICIES VIOLATE THE CIVIL RIGHTS LAWS OF NUMEROUS STATES

100.   The Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

101.   This Count is brought pursuant to RCW 7.24.010 against the Defendants.

102.   Numerous states have enacted state statutory provisions paralleling § 1981.[5]

103.   For example, Washington's Law Against Discrimination,[6] California's Unruh Civil Rights Act,[7] New Jersey's Law Against Discrimination,[8] and New York's Human Rights Law[9] all bar private actors from discriminating in commercial relations at least as sweepingly as does federal law. Still by way of example, at least California, New Jersey, and New York bar such discrimination based on race, sex, and sexual orientation.

104.   Moreover, some of the states enacting their own prohibitions on commercial discrimination have chosen to reject any federal precedent limiting the application of related federal laws. For example, the New York Human Rights Law expressly states that:

> [t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the

---

[5] Without being comprehensive, at least Washington, California, New York, and New Jersey have such laws and, arguably, at least Delaware and Oregon have laws with the same impact.

[6] Chapter 49.60 RCW.

[7] Cal. Civ. Code § 51.5(a).

[8] N.J. Stat. § 10:5-12(l).

[9] N.Y. Exec. Law § 296(2)(a).

COMPLAINT—JURY DEMAND - 17

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 30 -

provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct.[10]

105. Yet the Policies require precisely such discrimination in commerce.

106. Accordingly, the Policies facially violate a number of these state-level enactments.

107. The Plaintiff therefore asks the Court to declare that the Policies violate relevant state-law enactments, including at least those of Washington, California, New Jersey, and New York.

**VIII.  CAUSE OF ACTION**

**DECLARATORY JUDGMENT:**

**THE POLICIES EXPOSE STARBUCKS TO MATERIAL LIABILITIES**

108. The Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

109. This Count is brought pursuant to RCW 7.24.010 against the Defendants.

110. The Policies expose Starbucks to potential litigation, liability to a number of potential plaintiffs, and a potential host of liabilities to those parties in that litigation.

111. Countless parties could bring suit against Starbucks under federal law at a time of their choosing.

112. Every individual discriminated against under Policies 1, 3, 4, and 7 could do so.

113. Every supplier discriminated against under Policy 5 could do so.

114. Every media company discriminated against under Policy 6 could do so.

115. Alternatively, or in addition, under state law, with details varying by state, all such individuals could file administrative enforcement actions, state law claims, or both against Starbucks because of their treatment under the Policies.

116. Any number of governmental authorities could also bring related actions against Starbucks.

117. The U.S. Department of Justice has standing to enforce 42 U.S.C § 1981 and Title VII through direct action, at a time of its choosing.

---

[10] N.Y. Exec. Law § 300.

COMPLAINT—JURY DEMAND - 18

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 31 -

118.    The U.S. Equal Employment Opportunity Commission has standing to enforce those same statutes through its own investigations of corporate employment practices. EEOC Commissioners have the authority to launch such investigations under "Commissioner's charges," whether or not any affected individual files a related administrative complaint. Accordingly, the EEOC could launch an investigation of Starbucks based on the Policies at a time of its choosing.

119.    State Attorney Generals also have the option, at a time of their choosing, to bring such action enforcing 42 U.S.C. § 1981 against Starbucks, to the extent that Starbucks has applied the Policies against individuals or businesses situated within such State Attorney Generals' jurisdictions. Given Starbucks ubiquity, and the Policies self-ascribed application to "all corporate levels and … all retail and manufacturing roles[,]" *every* state Attorney General enjoys this option. Indeed, depending on state law, that option may extend to countless lower-ranking state officials, whether styled as District Attorneys, County Attorneys, or City Attorneys.

120.    In all of these potential litigations, an adverse judgment for violation of § 1981 would have no statutory cap on damages, and § 1981 plaintiffs would be entitled to recover punitive damages where the violation sued upon resulted from the violator's malice or reckless or callous indifference to a federally protected right.[11] Where, as here, the Policies were adopted by a prominent organization with experienced staff who knew or should have known of their illegality, and retained after the Starbucks D&O affirmatively *knew* of the Policies' illegality, the violation at issue would be the kind of intentional violation of § 1981 scorable as having arisen from actors' malice or reckless or callous indifference to a federally protected right.

121.    Accordingly, the exposure the Policies have created is not even limited to any party's real economic damages (although those, too, could be at issue in all eventual litigation), before

---

[11] 42 U.S.C. § 1981a(b)(1).

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

considering what, if any, damages the Policies would allow such actors to obtain from Starbucks under the host of relevant *state*-law enactments.

122.   In addition, no law would prohibit multiplicity. Not only could *any* state Attorney General (or local governmental authority authorized to take such action) bring such a suit, *every* state Attorney General (and local governmental authority authorized to take such action) could do so. Given the wide array of states that have state statutory provisions paralleling § 1981, should *many* states and/or others do so and include claims under their own state law, the resulting litigation likely could not be unified by transfer and consolidation into a single suit, or treatment as multi-district litigation applying uniform law. And the same is true of every private party Starbucks discriminates against under the Policies.

123.   *All* of these actors could bring actions against Starbucks and, should many choose to do so, Starbucks would be forced to defend every action for uncapped damages (including uncapped punitive damages), across these many forums.

124.   The Plaintiff therefore asks the Court to declare that the Policies expose Starbucks to material potential liability.

## IX.  CAUSE OF ACTION

### STARBUCKS D&O'S BREACHES OF THEIR FIDUCIARY OBLIGATIONS

125.   The Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

126.   This Count is brought pursuant to RCW 7.24.010 against the Defendants.

127.   Some or all of the Starbucks D&O knew or should have known that the Policies were illegal before they adopted and implemented the Policies. Those Starbucks' D&O breached their duties to Starbucks, including their duties of loyalty, good faith, and due care in adopting for Starbucks or allowing Starbucks' launch of the Policies.

128.   To the extent that any of the Starbucks D&O did not know that the Policies were illegal before their adoption and implementation, they could have failed to know that the Policies

COMPLAINT—JURY DEMAND - 20

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 33 -

1  were illegal only by breaching their duties of due care in failing to inquire as to the legality of

2  the Policies.

3  129.  In either case, the Starbucks D&O breached their fiduciary obligations to Starbucks in

4  adopting and implementing the Policies.

5  130.  Additionally or in the alternative, to the extent that any Starbucks D&O lacked knowledge

6  of the illegality of the Policies at their adoption and implementation (and managed to lack such

7  knowledge without having breached their duty of due care by failing to inquire as to the legality

8  of the Policies), every such Starbucks D&O breached their duties of loyalty, good faith, and

9  due care in *retaining* the Policies after learning of their illegality. Every Starbucks D&O had

10  such knowledge by no later than their receipt of the Demand Letter on March 31, 2022.

11  131.  As set out above, the relevant actions and inactions of the Starbucks D&O, undertaken

12  while each was a Starbucks Officer, a Starbucks Director, or both (and therefore a fiduciary of

13  Starbucks), have exposed Starbucks to the risk of a series of potential lawsuits, bringable by

14  many different parties, each of which has both apparent standing and the apparent right to

15  recover both uncapped real economic damages and uncapped punitive damages.

16  132.  These actions and inactions have thus harmed Starbucks and its shareholders, including the

17  Plaintiff.

18  133.  The Plaintiff asks the Court to award Starbucks its damages for the losses suffered by

19  Starbucks as a result of the Starbucks D&O's violations of their fiduciary duties.

20  **X.  CAUSE OF ACTION**

21  **STARBUCKS D&O'S BREACHES OF THEIR FIDUCIARY OBLIGATIONS – ALTERNATIVE THEORY**

22  134.  The Plaintiff hereby incorporates by reference the allegations contained in the preceding

23  paragraphs of this Complaint.

24  135.  This Count is brought pursuant to RCW 7.24.010 against the Defendants.

25  136.  The Starbucks D&O have incurred corporate expenses and created corporate liabilities by

26  adopting, implementing, and retaining the Policies.

27

COMPLAINT—JURY DEMAND - 21

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

137. While the Policies have caused Starbucks and its shareholders to suffer, the Starbucks D&O have enjoyed the social benefits of making Starbucks adopt, implement, and retain the Policies.

138. Adopting, implementing, and retaining the Policies for the Starbucks D&O's personal benefit, at the expense of Starbucks and its shareholders, constitutes self-dealing.

139. Washington State law requires fiduciaries who engage in self-dealing to demonstrate that they have acted in good faith and in a manner that is fundamentally fair. On information and belief, the Starbucks D&O can show neither.

140. Accordingly, the Starbucks D&O breached their duty of loyalty to Starbucks and its shareholders (including the Plaintiff) by adopting, implementing, and retaining the Policies with knowledge of their illegality.

141. The Plaintiff asks the Court to award Starbucks damages for the losses suffered by Starbucks as a result of the Starbucks D&O's violations of their fiduciary duties.

## XI. CAUSE OF ACTION

### STARBUCKS D&O'S *ULTRA VIRES* ACTIONS

142. The Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

143. This Count is brought pursuant to RCW 7.24.010 against the Defendants.

144. Starbucks has incorporated pursuant to the laws of Washington State.

145. The Restated Articles of Incorporation of Starbucks Corporation state, in relevant part, that the "corporation is organized for the purposes of transacting any and all business for which corporations may be incorporated under Title 23B of the Revised Code of Washington...."

146. Under Washington law, "every corporation has the ... power: ... (p) To transact any lawful business that will aid governmental policy[.]"[12] Washington's statute on permissible purposes of corporate entities echoes the same constraint: "Every corporation incorporated under this

---

[12] RCW 23B.03.20(2).

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    title has the purpose of engaging in any lawful business unless a more limited purpose is set

2    forth in the articles of incorporation."[13]

3    147.    Accordingly, under both the RCW and Starbucks current Articles of Incorporation,

4    Starbucks is limited to conducting "lawful business."

5    148.    As set forth above, the Starbucks D&O have adopted, implemented, and retained the

6    Policies, knowing that they violate a host of state laws (including the laws of Washington) and

7    federal laws. All acts taken or directed by the Starbucks D&O in adopting, implementing, and

8    retaining the Policies have been undertaken in conducting other than "lawful business[,]"

9    including those taken in direct violation of Washington's enacted "governmental policy."

10    149.    Under the law of Washington, corporate action may be challenged as *ultra vires* by a

11    shareholder seeking to enjoin the act (or in a derivative action against an incumbent or former

12    director, officer, employee, or agent of the corporation).[14] Expressly, Washington law

13    empowers a court hearing such an action brought by a shareholder to "enjoin or set aside the

14    act" and to "award damages for loss suffered by the corporation … because of … the

15    unauthorized act."[15]

16    150.    The Plaintiff asks the Court to award Starbucks damages for the losses suffered by

17    Starbucks as a result of the Starbucks D&O's unauthorized, illegal acts.

18    **XII.  CAUSE OF ACTION**

19    **PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

20    151.    The Plaintiff hereby incorporates by reference the allegations contained in the preceding

21    paragraphs of this Complaint.

22    152.    This Count is brought pursuant to Chapter 7.40 RCW against the Defendants.

23    153.    There is probable cause that the Plaintiff will prevail on the merits, and there is a reasonable

24    apprehension of irreparable harm absent injunctive relief.

25

26    [13] RCW 23B.03.010.

27    [14] RCW 23B.03.40 (1)-(2).
      [15] RCW 23B.03.40(3).

COMPLAINT—JURY DEMAND - 23

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 36 -

154. The Plaintiff has alleged and will provide the Court with sufficient evidence to establish that it has a reasonable probability of prevailing on the merits in demonstrating that the Policies are illegal. The Policies expressly discriminate based on race, in violation of § 1981, Title VII, and a host of state civil rights laws, including those of Washington. Accordingly, it is likely that the Plaintiff will prevail on the merits.

155. The Policies' violation of state and federal law exposes Starbucks and its shareholders to material potential liability.

156. A vast number of potential private and public plaintiffs could bring lawsuits against Starbucks related to the Policies today, tomorrow, or any other day before the relevant statutes of limitations have run.

157. Any or all of the parties bringing such litigation would be likely to prevail and potentially entitled to recover uncapped real and punitive damages from Starbucks.

158. Accordingly, the Plaintiff has alleged, and will provide the Court with sufficient evidence to establish that Starbucks faces the material risk of irreparable injury pending trial.

159. Moreover, the balance of equities favors injunctive relief. On the one hand, the Starbucks D&O's actions and inactions have threatened to open Starbucks and its shareholders to a pandora's box of potential, nationwide litigation, from a large universe of complainants, each entitled to uncapped real and punitive damages. On the other hand, the Starbucks D&O face no cognizable harm from an order enjoining them from pursuing the illegal Policies pending trial.

160. Accordingly, the Plaintiff asks the Court to enter:

(a) A preliminary injunction, enjoining the Starbucks D&O from continuing implementation of the Policies pending trial; and

(b) A final order following trial, permanently enjoining the Starbucks D&O from continuing implementation of the Policies.

COMPLAINT—JURY DEMAND - 24

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 37 -

### XIII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief and judgment as follows:

A.       Enjoin the Starbucks D&O from continuing to implement the Policies, both preliminarily through trial and, after trial, on a permanent basis;

B.       Declare that the Policies violate § 1981;

C.       Declare that Policies 1, 3, 4, and 7 violate Title VII;

D.       Declare that the Policies violate the laws of numerous states, including at least those of Washington, California, New Jersey, and New York;

E.       Declare that the Policies expose Starbucks and its shareholders to material liability;

F.       Declare that the Starbucks D&O have violated their fiduciary obligations to Starbucks and its shareholders, including the Plaintiff;

G.       Award Starbucks its damages from the various individual Defendants' breaches of their fiduciary obligations, including punitive damages;

H.       Award Starbucks its damages from the *ultra vires* acts undertaken by the Starbucks D&O or at their direction, including punitive damages;

H.       Award the Plaintiff its reasonable attorneys' fees, costs, and expenses to the extent permitted by law; and

I.       Award such other and further relief as the Court deems just and proper.

### XIV.  JURY DEMAND

The Plaintiff hereby demands a trial by jury.

///

///

///

///

///

///

///

COMPLAINT—JURY DEMAND - 25

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

EX. B - DEFENDANTS' NOTICE OF REMOVAL  - 38 -

1  August 30, 2022.

2  ARD LAW GROUP PLLC                          -AND-

3                                             THE AMERICAN CIVIL RIGHTS PROJECT

4  By: _____              Daniel I. Morenoff,

5      Joel B. Ard, WSBA # 40104               *pro hac vice* to follow

6      P.O. Box 11633                          P.O. Box 12207

   Bainbridge Island, WA 98110                 Dallas, Texas 75225

7      206.701.9243                            (214) 504-1835

   Joel@Ard.law                                dan@americancivilrightsproject.org

8

9  Attorneys For Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT—JURY DEMAND - 26

*NCPPR v. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243