1  GREGORY L. WATTS (WSBA #43995)
   STEPHANIE L. JENSEN (WSBA #42042)
2  MARY ZOU (WSBA #58082)
   Wilson Sonsini Goodrich & Rosati, P.C.
3  701 Fifth Avenue, Suite 5100
   Seattle, WA 98104-7036
4  Telephone:  (206) 883-2500
   Facsimile:   (206) 883-2699
5  Email:       gwatts@wsgr.com
   Email:       sjensen@wsgr.com
6  Email:       mzou@wsgr.com
   *Attorneys for Defendants*

7

8              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
9

| | |
|---|---|
| 10  NATIONAL CENTER FOR PUBLIC POLICY RESEARCH, | Case No. 2:22-CV-00267-SAB |
| 11       Plaintiff, | **DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS COMPLAINT** |
| 12    v. | |
| 13  HOWARD SCHULTZ, STARBUCKS CORPORATION, KEVIN JOHNSON, JOHN CULVER, RACHEL RUGGERI, TED ADAMS, TYSON AVERY, KELLY BENGSTON, BRADY BREWER, DENNIS BROCKMAN, GEORGE DOWDIE, JEN FRISCH, SHANNON GARCIA, RACHEL GONZALEZ, ZABRINA JENKINS, A.J. JONES, II, SARA KELLY, JENNIFER KRAFT, ANGELA LIS, CARL MOUNT, DENISE NELSEN, ANJU RAO, KYNDRA RUSSELL, DEBBIE STROUD, ROSANN WILLIAMS, GINA WOODS, MELLODY HOBSON,  RICHARD E. ALLISON, JR., ANDREW CAMPION, MARY N. DILLON, ISABEL GE MAHE, JORGEN VIG KNUDSTORP, SATYA NADELLA, JOSHUA COOPER RAMO, CLARA SHIH, AND JAVIER G. TERUEL, | HEARING DATE: 08/11/2023 With Oral Argument:  9:30 a.m. VIA VIDEOCONFERENCE |
| 20       Defendants. | |

21

STARBUCKS CORPORATION'S
MOTION TO DISMISS

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS ......................................................................4

ARGUMENT .........................................................................................8

I.      PLAINTIFF IS NOT A FAIR OR ADEQUATE REPRESENTATIVE ........8

    A.      Plaintiff is Pursuing Its Personal Interests, Not Those of Starbucks ......................................................................10

    B.      Plaintiff Has Shown Its Vindictiveness to Defendants ......................12

    C.      Plaintiff's Remedy Would Cause Significant Harm to the Company ...................................................................13

    D.      Plaintiff Lacks Support from the Company's Major Shareholders ..............................................................16

II.     THE COMPLAINT FAILS TO ADEQUATELY ALLEGE WRONGFUL REFUSAL OF THE DEMAND .............................................17

III.    ADDITIONAL GROUNDS FOR DISMISSAL ..........................................20

CONCLUSION .....................................................................................20

STARBUCKS CORPORATION'S MOTION TO DISMISS

- i -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## <u>CASES</u>

4

*Belova v. Sharp,*
    2008 WL 700961 (D. Or. Mar. 13, 2008) ....................................................18

5

*Brenner v. Albrecht,*
    2012 WL 252286 (Del. Ch. Jan. 27, 2012) ..................................................15

6

*Bresalier ex rel. Duke of Energy Corp. v. Good,*
    246 F. Supp. 3d 1044 (D. Del. 2017) ............................................................3

7

*Cohen v. Beneficial Industrial Loan Corp.,*
    337 U.S. 541 (1949)........................................................................................8

8

*Daily Income Fund v. Fox,*
    464 U.S. 523 (1984)........................................................................................9

9

*Gould ex rel. Bank of America v. Moynihan,*
    275 F. Supp. 3d, 487 (S.D.N.Y. 2017) ........................................................20

10

*Haberman v. Wash. Pub. Power Supply Sys.,*
    109 Wash. 2d 107, 744 P.2d 1032 (1987) .....................................................2

11

*In re Boeing Co. Deriv. Litig.,*
    2021 WL 4059934 (Del. Ch. Sept. 7, 2021)................................................14

12

*In re Duke Energy Corp. Coal Ash Deriv. Litig.,*
    2015 WL 5135066 (Del. Ch. Aug. 31, 2015)...............................................15

13

*In re F5 Networks, Inc.,*
    166 Wash.2d 229, 207 P.3d 433 (2009) .........................................................1

14

*In re infoUSA, Inc. S'holders Litig.,*
    953 A.2d 963 (Del. Ch. 2007) ........................................................................4

15

*In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig,*
    773 F. Supp. 2d 330 (S.D.N.Y. 2011) ......................................................3, 20

16

*In re RH S'holder Deriv. Litig.,*
    2019 WL 580668 (N.D. Cal. Jan. 23, 2019)................................................14

17

*In re Silicon Graphics, Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) ..........................................................................1

18

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991)..........................................................................................1

19

*Kenneth v. Yeung Chi Shing Hldg., Inc.,*
    2020 WL 409010 (N.D. Cal. Jan. 24, 2020)...........................................10, 14

20

21

*Knopf v. Semel*,
  2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ....................................3

*Larson v. Dumke*,
  900 F.2d 1363 (9th Cir. 1990) ....................................9, 10, 12, 13,14, 16

*Marchand v. Barnhill*,
  212 A.3d 805 (Del. 2019) ....................................14

*Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz*,
  1991 WL 50149 (Del. Ch. Apr. 4, 1991), *aff'd*, 599 A.2d 413
  (Del. 1991) ....................................20

*Myers v. Alstead, et al.*,
  2017 WL 3872408 (W.D. Wash. Sept. 5, 2017) ....................................1, 4, 18

*Owen v. Modern Diversified Indus. Inc.*,
  643 F.2d 441 (6th Cir. 1981) ....................................10, 11

*Quinn v. Anvil*,
  620 F.3d 1005 (9th Cir. 2010) ....................................17, 18

*Smith v. Ayers*,
  977 F.2d 946 (5th Cir. 1992) ....................................10, 11, 12, 16

*South v. Baker*,
  62 A.3d 1 (Del. Ch. 2012) ....................................8, 9

*Spiegel v. Buntrock*,
  571 A.2d 767 (Del. 1990) ....................................3, 18

*Youngman v. Tahmoush*,
  457 A.2d 376 (Del. Ch. 1983) ....................................9, 10, 13, 14, 16

## STATUES

RCW 23B.07.400 ....................................1

RCW 23B.07.400(2) ....................................3, 17, 20

RCW 23B.08.010(2)(b) ....................................1

## RULES

Rule 23.1 ....................................1, 16, 18, 20

Rule 23.1(a) ....................................8, 10, 12

Rule 23.1(b)(3) ....................................17, 18

STARBUCKS CORPORATION'S MOTION
TO DISMISS
- iii -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Nominal Defendant Starbucks Corporation ("Starbucks" or the "Company") moves to dismiss Plaintiff National Center for Public Policy Research's ("Plaintiff" or "NCPPR") Complaint ("¶\_"), ECF No. 1-2, pursuant to Federal Rule of Civil Procedure ("Rule") 23.1 and RCW 23B.07.400.

## INTRODUCTION

A fundamental tenant of Washington corporate law is that a corporation's board of directors has exclusive authority to make decisions concerning the management of the corporation's business. RCW 23B.08.010(2)(b).[1] This authority includes the right to decide whether to initiate litigation. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991) ("basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors" (citation omitted)).

---

[1] Starbucks is incorporated in Washington, ¶11, and the substantive law of Washington governs this action. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999). In the absence of clear Washington law, "Washington courts often look to Delaware courts for guidance on issues that arise in shareholder derivative suits" and matters of corporate governance. *Myers v. Alstead, et al.*, 2017 WL 3872408, at *4 n.4 (W.D. Wash. Sept. 5, 2017); *see also In re F5 Networks, Inc.*, 166 Wash.2d 229, 239, 207 P.3d 433 (2009) (same).

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 1 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Through this derivative lawsuit, Plaintiff, a purported owner of 56 shares of Starbucks stock, seeks to usurp the authority of the Starbucks Board, override the Board's rejection of Plaintiff's Demand, supplant the Board's business judgments with Plaintiff's own preferences, and litigate this case **on behalf of** Starbucks. Shareholder derivative lawsuits "are disfavored and may be brought only in exceptional circumstances." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash. 2d 107, 147, 744 P.2d 1032 (1987).

Plaintiff cannot proceed with this shareholder derivative lawsuit because it does not fairly and adequately represent the interests of shareholders, as required by Rule 23.1(a). Plaintiff's own Complaint, public statements, and course of conduct make clear that Plaintiff seeks to advance its own public policy agenda in disservice to the legitimate interests of Starbucks and its shareholders. Plaintiff's agenda—opposition to the principles of Diversity, Equity, and Inclusion ("DEI") it characterizes as "evils" perpetrated by "woke" corporate America—has little support from the Company's other shareholders. Plaintiff's use of such epithets in the Complaint reveals a vindictiveness to Starbucks that disqualifies Plaintiff from representing the Company's interests. And Plaintiff's requested remedy—declaratory judgment that the Company's inclusion and diversity initiatives ("Initiatives") violate federal and state anti-discrimination laws—would

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 2 -                    WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

not be in the Company's best interests since it would provide a springboard for unwarranted litigation **against** the Company.

Even if Plaintiff could fairly and adequately represent the interests of Starbucks and its shareholders (Plaintiff cannot), the Complaint must still be dismissed because Plaintiff did not verify the Complaint, as required by RCW 23B.07.400(2), and fails to allege with particularity that its Demand was wrongfully refused, as required by Rule 23.1(b)(3) and RCW 23B.07.400(2). By making the Demand upon Starbucks Board, Plaintiff conceded that the Board was sufficiently disinterested and independent to consider it, *see Bresalier ex rel. Duke of Energy Corp. v. Good*, 246 F. Supp. 3d 1044, 1052 (D. Del. 2017), and that the Board's decision to reject the Demand is entitled to broad deference under the business judgment rule, *see In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig*, 773 F. Supp. 2d 330, 345 (S.D.N.Y. 2011) ("board's decision to reject a demand is entitled to the benefit of the business judgment rule"); *Knopf v. Semel*, 2010 WL 965308, at *7 (N.D. Cal. Mar. 17, 2010) (same).

A key question for the Court, therefore, is whether Plaintiff has alleged sufficient facts showing that the Board's examination of the Demand was not sufficiently informed, in bad faith, and without an honest belief that the refusal of the Demand was in the best interests of Starbucks. *See Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990) ("when a board refuses a demand, the only issues to be

STARBUCKS CORPORATION'S
MOTION TO DISMISS                - 3 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

examined are the good faith and reasonableness of its investigation."); *Myers*, 2017 WL 3872408, at *4 (W.D. Wash. Sept. 5, 2017) (same); *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007) (a board has discretion to refuse to file a lawsuit if it believes it is not in the company's best interest). Plaintiff pleads no such facts. Instead, the Complaint and judicially noticeable facts show that the Board rejected the Demand as "not in the best interest of Starbucks" only "[a]fter careful deliberation and consideration," including "the merits of the Demand's contentions and the Company's core mission and values of creating a culture of inclusion, diversity, and equity," the Initiatives themselves, interviews of Starbucks partners (employees) responsible for their creation and implementation, and the "current state of potentially applicable law." *See* Exhibit 1 to the Declaration of Stephanie L. Jensen ("Ex. _").

## STATEMENT OF FACTS

***The Company.*** Starbucks is the premier roaster, marketer, and retailer of specialty coffee globally. Ex. 2 at 7; *see also* ¶1. Starbucks is committed to "Inclusion, Diversity and Equity" and has implemented Initiatives in hopes of creating "tangible and lasting change" through "intentionality, transparency and accountability." ¶¶50-52. Since 2019, Starbucks has commissioned assessments by former U.S. Attorney General Eric Holder, Jr. to evaluate Starbucks progress on civil rights and provide recommendations for how Starbucks can better advance DEI on

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 4 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

behalf of its partners (Starbucks term for its employees), customers, and communities. Starbucks publishes these periodic assessments. Ex. 3.

**Plaintiff.** NCPPR is a conservative group that engages in shareholder activism to advance conservative causes, including combatting what it characterizes as the "evils of woke politicized capital and companies…committed to critical race theory and the socialist foundations of woke," Ex. 4 at 3, "corporate America's 'woke' embrace of illegal, racial discrimination," Ex. 5, and "other hard-left goals of so-called stakeholder capitalism and ESG." Ex. 6 at 3. NCPPR owns 56 shares of Starbucks stock. Ex. 7; ¶67.

Plaintiff has repeatedly submitted proposals that have been rejected by the vast majority of Starbucks shareholders. In 2019, Plaintiff put forward a shareholder proposal that would have required Starbucks to adopt a policy of disclosing each Board nominee's "ideological perspectives" because Plaintiff alleged "[t]here is ample evidence that the Company operates in ideological hegemony that eschews conservative people, thoughts, and values." Ex. 8 at 55. Shareholders soundly rejected this proposal, with only 1% of the total possible votes cast in favor. Ex. 9.

Undeterred, in 2020, Plaintiff put forth a shareholder proposal that Starbucks issue a public report detailing (alleged) potential risks associated with omitting "viewpoint" and "ideology" from its written equal employment opportunity policy, because it claimed "[i]ndividuals with conservative viewpoints may face

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 5 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

discrimination at Starbucks as has been seen at other companies with far-left leadership." Ex. 10 at 65. This proposal was also rejected, again with only 1% of the total possible votes cast in favor of the proposal. Ex. 11.

And in 2023, Plaintiff put forth yet another shareholder proposal that Starbucks create a Board committee to review the impact of the Company's "woke business practices"—Plaintiff's description of Starbucks racial-bias education and policy of allowing non-patrons to use store bathrooms—on Starbucks ongoing growth and sustainability. Ex 12 at 84-85; Ex. 13. This, too, was rejected with less than 3% of the total possible votes cast in favor of the proposal. Ex. 14 at 4.

***Plaintiff's Demand.*** On March 25, 2022, the American Civil Rights Project ("ACRP"), a conservative public-interest law firm, published an open letter (the "Demand") on behalf of Plaintiff to Starbucks, its Board, and many officers and partners. ¶¶4, 54; Ex 15. The Demand challenged Initiatives announced by the Company in 2020 and 2022. ¶¶2, 51-54; Ex. 15. It told Starbucks to "immediately, publicly retract [them] in their entirety" or Plaintiff would "seek judicial relief to protect Starbucks and [Plaintiff's] interests in the company" from alleged "breaches of [] fiduciary duties." Ex. 15 at 5. In other words, if the Board did not retract the Initiatives that clashed with Plaintiff's policy preferences, it would file suit.

***The Board Considers and Rejects Demand.*** The Starbucks Board considered the Demand, and on July 21, 2022, rejected it. ¶¶5, 68; Ex. 1. During its examination,

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

the Board engaged the assistance of "management, outside counsel and relevant subject matter experts[.]" Ex. 1 at 1. It reviewed and analyzed the Demand, the challenged Initiatives, and the relevant legal issues presented by the Demand. The Board's process included, among other things:

> [T]he review of Starbucks policy documents, the interview of Starbucks partners (employees) who have responsibility for the creation, implementation, and operational oversight of the [Initiatives], the evaluation of the Demand's challenges to the [Initiatives] based on the actual Starbucks policy documents and operational information from interviews, the review of the current state of potentially applicable law, and the analysis of the [Initiatives] in light of the law on which adverse discrimination claims might be grounded.

*Id.* Only after "careful deliberation and consideration of the information it received and relevant factors," including "the Company's core mission and values of creating a culture of inclusion, diversity, and equity," did the Board reject the Demand, determining it was "not in the best interests of Starbucks to accept the Demand and retract the [Initiatives]." *Id.* at 1-2; *see also* ¶¶5, 68.

**Plaintiff Sues.** Despite the Board's determination that it was not in the best interest of Starbucks to accept the Demand and retract the Initiatives, on August 30, 2022, Plaintiff filed the Complaint in Spokane County Superior Court (a) seeking declaratory judgments that the Initiatives violate federal and state laws, ¶¶72-124 (Counts I-IV), (b) alleging that the Company's directors and certain of its officers and partners had breached their fiduciary duties to Starbucks by adopting and implementing the Initiatives, ¶¶125-41 (Counts V-VI), (c) challenging these

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 7 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Initiatives as *ultra vires* acts, ¶¶142-50 (Count VII), and (d) seeking injunctive relief against their continuation. ¶¶151-60. ***Notably, the Complaint does not include a single allegation challenging the process the Starbucks Board undertook in considering and rejecting the Demand***.

## ARGUMENT

## I.    PLAINTIFF IS NOT A FAIR OR ADEQUATE REPRESENTATIVE

"[A] stockholder who brings suit on a cause of action derived from the corporation assumes a position…of a fiduciary character." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549-50 (1949). "The interests of all…are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* And "while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion." *Id.*

These principles are the bases for Rule 23.1(a), which dictates that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders…in enforcing the right of the corporation[.]" This "requirement of adequate representation flows from the Due Process Clause of the United States Constitution and the protection it affords the non-parties on whose behalf the representative plaintiff purports to litigate." *South v. Baker*, 62 A.3d 1, 21 (Del. Ch. 2012). Rule 23.1(a) is "intended to prevent

STARBUCKS CORPORATION'S
MOTION TO DISMISS
- 8 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1  shareholders from suing in place of the corporation in circumstances where the

2  action would disserve the legitimate interests of the company or its shareholders."

3  *Daily Income Fund v. Fox*, 464 U.S. 523, 532 n.7 (1984). Courts "should examine

4  any extrinsic factors, that is, outside entanglements which make it likely that the

5  interests of the other stockholders will be disregarded in the prosecution of the suit."

6  *Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1983).

7      Factors courts consider in determining whether a derivative plaintiff "fairly

8  and adequately" represents the interests of a corporation or its shareholders are: (a)

9  the relative magnitude of plaintiff's personal interests as compared to his interest in

10  the derivative action itself; (b) plaintiff's "vindictiveness" toward the defendants; (c)

11  the remedy sought by plaintiff in the derivative action; and (d) the degree of support

12  received by the plaintiff from other shareholders. *See Larson v. Dumke*, 900 F.2d

13  1363, 1367 (9th Cir. 1990). While it is "frequently a combination of factors which

14  leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1,"

15  *id.*, a "strong showing of one factor" is sufficient,  particularly if it is "inimical" to

16  the interests of the company or the company's other shareholders, *Youngman*, 457

17  A.2d at 380; *see also South*, 62 A.3d at 22 ("strong showing as to one factor is

18  sufficient" if that factor "involve[s a] conflict of interest"). Here, these factors make

19  clear that Plaintiff cannot "fairly and adequately" represent the interests of Starbucks

20  or its shareholders, and that the Complaint must be dismissed under Rule 23.1(a).

21

STARBUCKS CORPORATION'S
MOTION TO DISMISS                          - 9 -

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**A.      Plaintiff is Pursuing Its Personal Interests, Not Those of Starbucks**

In determining whether a derivative plaintiff will fairly and adequately represent the interests of the company and its other shareholders, a court may consider the "relative magnitude of plaintiff's personal interests as compared to his interest" in enforcing the Company's rights. *Youngman*, 457 A.2d at 379-80; *see also Larson*, 900 F.2d at 1367; *Kenneth v. Yeung Chi Shing Hldg., Inc.*, 2020 WL 409010, at *6 (N.D. Cal. Jan. 24, 2020). The plaintiff "must bring the derivative action primarily to enforce the right of the corporation." *Owen v. Modern Diversified Indus. Inc.*, 643 F.2d 441, 443 (6th Cir. 1981). "The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda." *Smith v. Ayers*, 977 F.2d 946, 949 (5th Cir. 1992). Here, Plaintiff's minuscule financial interest in Starbucks coupled with Plaintiff's stated purpose to use "a series of lawsuits," as a "tool" in "an ever-growing arsenal of tools, strategies and allies to defeat the leftist takeover of American business and capital," show that Plaintiff did not file this action to enforce the interests of Starbucks, but to advance its own political and public policy agendas. Ex. 6 at 3, 5.

Plaintiff owns only 56 shares of approximately 1.15 billion outstanding shares of Starbucks stock. Exs. 7 at 2; 12 at 17. Plaintiff's shares are worth approximately $6,000 of a Company with a market capitalization of $121 billion. Ex. 16. Plaintiff purchased these shares as an admission ticket to the arena of shareholder activism

1    and what it hoped would be standing to pursue derivative litigation. Courts consider

2    such "*de minimis* equity investment[s]" relative to its other interests as a noteworthy

3    factor in determining a derivative plaintiff's actual motives. *Owen*, 643 F.2d at 444;

4    *see also Smith*, 977 F.2d at 948-49 (courts "may properly consider the amount of the

5    plaintiff's stake in the corporation as balanced against" the plaintiff's "external

6    interests"; noting plaintiff's "negligible interest" of only "1/10,000,000 of the

7    authorized shares").

8        Plaintiff's lawsuit, purportedly brought on behalf of Starbucks, is just a small

9    part in Plaintiff's broader, nationwide campaign of shareholder activism and

10   litigation against so-called "woke" corporate practices on issues of inclusion,

11   diversity, and equity. Plaintiff has explicitly identified Starbucks, among other

12   companies, as "too indoctrinated and too committed to see common sense on their

13   own[,]" and that "outside pressure" through "[l]awsuits…and significant

14   settlements" as one of a handful of strategies it believes will "bring home to these

15   CEOs and boards that antidiscrimination laws still apply, regardless of their heady

16   theories." Ex. 6 at 36; *see also id*. at 10-11 ("companies are only going to come to

17   their senses after a raft of lawsuits reminds them"). On behalf of Plaintiff, the ACRP

18   has sent similar demands to many other public companies demanding the retraction

19   of policies similar to the Initiatives. These companies include Dropbox, JP Morgan

20   Chase, Levi & Strauss, McDonald's, Novartis, Pfizer, and American Airlines. Exs.

21

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

17-23. It is clear that Plaintiff's crusade against corporate America's DEI efforts is its priority, not a desire to fairly and adequately represent the interests of Starbucks and its shareholders.

**B.    Plaintiff Has Shown Its Vindictiveness to Defendants**

A court "may properly consider the plaintiff's vindictiveness toward the defendant in determining whether the plaintiff is an adequate representative of the stockholders" under Rule 23.1(a). *Smith*, 977 F.2d at 949; *Larson*, 900 F.2d at 1367; *Youngman*, 457 A.2d at 380. Here, Plaintiff's vindictiveness toward Starbucks and the Defendants is irrefutable.

The Complaint claims the Defendants "crafted and publicized these policies with fanfare, preening over the supposed moral virtue their adoption signaled," ¶3, and created and implemented the Initiatives to "buy[] themselves social-credit," ¶7, and "to pose as virtuous advocates" of DEI, ¶6. And Plaintiff has publicly stated that its goal in filing this lawsuit is "to halt, at the wholesale level, corporate America's 'woke' embrace of illegal, racial discrimination." Ex. 5.

Materials on Plaintiff's website make its vindictiveness clearer still. Plaintiff's "Balancing the Boardroom 2022" publication describes its shareholder activism as "fighting back" against "the evils of woke politicized capital and companies." Ex. 4 at 3. It describes "CEOs and other corporate executives who are most woke and most hard-left political in their management of their corporations" as "inimical to the

STARBUCKS CORPORATION'S
MOTION TO DISMISS                - 12 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Republic and its blessings of liberty." *Id*. It identifies corporate directors and executives like Defendants as either "committed to critical race theory and the socialist foundations of woke" or "shameless monsters who are willing to sacrifice our futures to their comforts." *Id*. And it encourages readers to vote against every Starbucks board member up for re-election. *Id*. at 4. Plaintiff's "2022 Investor Value Voter Guide" describes corporate directors and executives as "pompous executives" in favor of "politicized managerial socialism" and claims they are "selling great masses of white people and men into penury and powerlessness." Ex. 6 at 5. Plaintiff even goes so far as to contend that the "final goal" of "all woke, critical-theory, 'equity'-based efforts" by progressive corporate directors and executives is to "push the United States toward a corrupt, decrepit, poverty-stricken socialist dystopia animated by identity-group competition for the scraps remaining after the rewards for hard work and high achievement have been eliminated." *Id*. at 9.

Plaintiff's blatant vindictiveness towards and contempt for the Company and Defendants disqualifies Plaintiff from representing Starbucks in a derivative action because it cannot "fairly and adequately" represent its interests.

## C.    Plaintiff's Remedy Would Cause Significant Harm to the Company

A court may consider the "remedy sought by plaintiff in the derivative action" to determine whether a plaintiff can fairly and adequately represent the interests of a company and its shareholders. *Youngman*, 457 A.2d at 379; *see also Larson*, 900

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 13 -                    WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   F.2d at 1367; *Kenneth*, 2020 WL 409010, at *6. "In general, a derivative suit must

2   be in the company's best interest in order to proceed." *In re RH S'holder Deriv.*

3   *Litig.*, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019). If the remedy requested by

4   the plaintiff is not in the company's best interests, it shows that the plaintiff would

5   not fairly and adequately represent the interests of the company.

6          Traditionally, derivative actions are filed in the wake of corporate trauma,

7   whereby the company suffered harm, and a shareholder attempts to bring a

8   derivative suit to place the responsibility for that harm on the company's board

9   and/or management due to breaches of fiduciary duty. *See, e.g.*, *Marchand v.*

10  *Barnhill*, 212 A.3d 805, 809, 814, 822-24 (Del. 2019) (listeria outbreak at ice cream

11  company killed three customers, a total recall of products, and a layoff of one-third

12  of workforce); *In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934, at *12, 17, 20 (Del.

13  Ch. Sept. 7, 2021) (two 737 MAX crashes killed everyone onboard and led to

14  grounding of 737 MAX fleet for twenty months, criminal charges, $22.5 billion in

15  costs, and billions in penalties). Conversely, here, Plaintiff utterly fails to point to

16  any actual corporate catastrophe that could have been avoided but for the alleged

17  breaches of fiduciary duty. At most, Plaintiff alleges the ***potentiality*** of lawsuits. ¶¶4

18  (initiatives have "invited" suits), 118 (EEOC "could launch an investigation"), 119

19  (State Attorney Generals "have the option, at a time of their choosing" to bring an

20  action), 123 (governmental actors "could bring actions"), 131 ("risk of a series of

21

potential lawsuits"), 159 ("a pandora's box of potential" lawsuits).

Instead, the "remedy" Plaintiff seeks—declaratory judgments that Starbucks has violated federal and state anti-discrimination laws—would itself ***cause harm*** to the Company. Such declarations that the Company has violated positive law are inimical to the best interests of Starbucks, particularly when there has been no adjudication that any of these initiatives have violated any laws. *See In re Duke Energy Corp. Coal Ash Deriv. Litig.*, 2015 WL 5135066, at *1 (Del. Ch. Aug. 31, 2015) (pointing out possible prejudice in defending lawsuits subject to simultaneous derivative litigation); *Brenner v. Albrecht*, 2012 WL 252286, at *5-6 (Del. Ch. Jan. 27, 2012) (pointing out the problem with a derivative action that, if proven, would undermine or hamstring the company's defense in other litigation). Were Plaintiff to obtain the declaratory judgments it seeks, it would encourage the very parade of horribles of which Plaintiff warns. ***And far from an unintended consequence, laying the groundwork for such lawsuits is Plaintiff's explicit goal.*** When Plaintiff announced its new partnership with ACRP to pursue "legal redress for the 'equity'-based policies of discrimination sweeping through too many companies," it explained, "some of these companies are only going to come to their senses after a raft of lawsuits reminds them that they are not above the law, regardless of whatever novel (and repugnant) critical theories they embrace." Ex. 6 at 10-11. It counters the very purpose of derivative litigation to allow a shareholder purportedly acting on

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 15 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

behalf of a company to use a derivative lawsuit to ***create harm*** to the company that would not be inflicted absent the lawsuit and the remedies the shareholder seeks.

### D.    Plaintiff Lacks Support from the Company's Major Shareholders

A court "may properly consider the degree of support a would-be shareholder plaintiff will receive from other shareholders in determining the adequacy of representation under Rule 23.1." *Smith*, 977 F.2d at 948; *Larson*, 900 F.2d at 1367; *Youngman*, 457 A.2d at 380. As discussed above, Plaintiff owns 56 shares of Starbucks. The Company's largest shareholders, Blackrock Inc. and The Vanguard Group, own over 79 million and 88 million shares of Starbucks, respectively. Ex. 2 at 93. Together, they own over 14 percent of the Company's common stock. *Id*. Based on public disclosures made by Blackrock and Vanguard, both firms support corporate DEI initiatives.

Blackrock has publicly stated that it "encourage[s] companies to advance diversity of their boards and workforces[,]" and that it supports "racial equity audits" and corporate reports on the progress of "DEI efforts." Ex. 24 at 45, 58, 59. Blackrock's Chairman and CEO Larry Fink has stated that "the path to racial justice" is "one that cannot be solved without leadership from companies" and has asked Blackrock's portfolio companies to disclose their strategies to improve DEI. Ex. 25 at 4. Due to his stance on these issues, Plaintiff has described Mr. Fink as "a real-life Bond villain." Ex. 4 at 3. Vanguard has also advocated for "boardroom diversity

STARBUCKS CORPORATION'S
MOTION TO DISMISS                           - 16 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1    and oversight of material DEI risks at the companies in which [its] funds invest,"

2    and has encouraged corporate boards "to disclose their oversight of diversity-related

3    strategies" and "diversity measures beyond the boardroom." Ex. 26 at 36.

4    Vanguard's CEO has stated that "[d]iverse groups make better decisions" and that it

5    is Vanguard's "aspiration to have every level of leadership [at Vanguard] reflect the

6    gender and racial diversity" of its employee population. *Id*. at 3.

7    　　　Plaintiff's prior activist efforts also show that the vast majority of Starbucks

8    shareholders oppose Plaintiff's efforts. As discussed above, Plaintiff submitted

9    shareholder proposals related to its version of diversity in 2019, 2020, and 2023,

10   which were resoundingly voted down by Starbucks shareholders each time.

11   　　　By this lawsuit, Plaintiff seeks to usurp the authority of the Starbucks Board

12   and obtain outsized control of the Company's decision making to advance its own

13   agenda in a manner contrary to desires of the Company's Board, management, and

14   other shareholders, including its two largest shareholders. Plaintiff is not a fair and

15   adequate representative of Starbucks. Its Complaint should be dismissed.

16   **II.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE
        WRONGFUL REFUSAL OF THE DEMAND**

17   　　　Even if Plaintiff "fairly and adequately" represented the interests of Starbucks

18   and its shareholders (it does not), this suit must be dismissed because Plaintiff fails

19   to plead with particularity that the Board's refusal of its Demand was wrongful. Rule

20   23.1.(b)(3); RCW 23B.07.400(2). This requirement is "stringent," *Quinn v. Anvil*,

21

STARBUCKS CORPORATION'S
MOTION TO DISMISS

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

620 F.3d 1005, 1012 (9th Cir. 2010), and "more onerous than that required to withstand an ordinary motion to dismiss." *Belova v. Sharp*, 2008 WL 700961, at *3 (D. Or. Mar. 13, 2008).

The business judgment examined by a court for purposes of Rule 23.1 in a wrongful refusal derivative lawsuit is not the underlying decisions or actions by the alleged wrongdoers (here, the creation and implementation of the Initiatives), but the board's exercise of its business judgment in refusing the demand. By making the Demand upon the Company's Board, Plaintiff conceded that the Board was sufficiently disinterested and independent to consider it. Thus, "the only issues to be examined are the good faith and reasonableness of [the Board's] investigation." *Spiegel*, 571 A.2d at 767. Recognizing that there is "no prescribed procedure that a board must follow" when considering a demand, a plaintiff must plead facts that create a reasonable doubt that the board's refusal was "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Myers*, 2017 WL 3872408, at *4 (W.D. Wash. Sept. 5, 2017).

Here, the Complaint is devoid of ***any allegations*** that the Starbucks Board's refusal of the Demand was wrongful, that its investigation was unreasonable or not undertaken in good faith, that it was not sufficiently informed, or that its process was in any way inadequate. Nor could it make such allegations, as the refusal letter conveyed the thorough process the Board undertook to inform itself before

STARBUCKS CORPORATION'S
MOTION TO DISMISS

- 18 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   exercising its business judgment and rejecting the Demand. The Board engaged

2   outside counsel, management, and relevant subject matter experts to assist it in

3   evaluating the Demand's contentions. Ex. 1 at 1. The Board's process included

4   review of the Demand's contentions, relevant Starbucks policy documents,

5   interviews of Starbucks partners responsible for the creation, implementation, and

6   operational oversight of the Initiatives, and "the current state of potentially

7   applicable law." *Id*. Only after "careful deliberation and consideration of the

8   information," including "the merits of the Demand's contentions and the Company's

9   core mission and values of creating a culture of inclusion, diversity, and equity," did

10  the Board determine that it is "not in the best interests of Starbucks" to retract the

11  challenged Initiatives, and accordingly rejected the Demand. *Id*. at 1-2.

12      The Board's process in evaluating the Demand must also be viewed in

13  context. As discussed above, the Demand was not the first time the Board had

14  considered anti-discrimination claims raised by Plaintiff. More importantly, the

15  Company's commitment to DEI, generally, and the Initiatives, specifically, were not

16  unfamiliar topics to the Board when it considered the Demand. Since 2019,

17  Starbucks has commissioned and published periodic objective civil rights

18  assessments by former U.S. Attorney General Eric Holder, Jr. Ex. 3. Indeed, the crux

19  of the Complaint is that the Board was ***too focused*** on DEI issues. ¶¶2-6, 50-53. The

20  Board's longstanding focus on DEI issues further shows it was adequately informed

21

STARBUCKS CORPORATION'S
MOTION TO DISMISS                                    - 19 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

when it rejected the Demand. *Gould ex rel. Bank of America v. Moynihan*, 275 F. Supp. 3d, 487, 496 (S.D.N.Y. 2017); *see Merrill Lynch*, 773 F. Supp. 2d at 349 (board need not conduct new investigation when it was "already quite familiar with the allegations in" the demand); *Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz*, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991) ("issues raised in demand letters were 'well known' to the [board]"), *aff'd*, 599 A.2d 413 (Del. 1991).

Since the Complaint is devoid of a single allegation that the Board was not adequately informed, did not conduct a sufficiently thorough investigation of the Demand, or reached its decision in bad faith, Plaintiff fails to rebut the business judgment presumption that the Board acted on an informed basis, in good faith, and in the honest belief that rejecting the Demand was in the best interests of Starbucks. Plaintiff, therefore, is precluded from usurping the authority of Starbucks Board, and the Complaint must be dismissed.

## III.    ADDITIONAL GROUNDS FOR DISMISSAL

The Complaint must also be dismissed for Plaintiff's failure to verify it, RCW 23B.07.400(2), Rule 23.1, and for the reasons stated in the Individual Defendants' motion to dismiss, which Starbucks joins.

## CONCLUSION

For the reasons above, the Complaint should be dismissed with prejudice for failure to satisfy Rule 23.1(a), Rule 23.1(b)(3), and RCW 23B.07.400(2).

STARBUCKS CORPORATION'S
MOTION TO DISMISS                    - 20 -

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   Dated: May 19, 2023                Respectfully submitted,

2                              By:  s/ Gregory L. Watts

                               By:  s/ Stephanie L. Jensen

3                              By:  s/ Mary Zou

                              Gregory L. Watts, WSBA #43995

4                              Stephanie L. Jensen, WSBA #42042

                              Mary Zou, WSBA #58082

5                              Wilson Sonsini Goodrich & Rosati, P.C.

                              701 Fifth Avenue, Suite 5100

6                              Seattle, WA 98104-7036

                              Telephone:  (206) 883-2500

7                              Facsimile:  (206) 883-2699

                              Email: gwatts@wsgr.com

8                                    sjensen@wsgr.com

                                    mzou@wsgr.com

9

10                             *Counsel for Nominal Defendant Starbucks Corporation*

11

12

13

14

15

16

17

18

19

20

21

STARBUCKS CORPORATION'S
MOTION TO DISMISS          - 21 -          WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      I certify that on this 19th day of May, 2023, I caused a copy of Defendant

3   Starbucks Corporation's Motion to Dismiss Complaint to be electronically filed with

4   the Clerk of the Court using the CM/ECF system, which in turn automatically

5   generated a Notice of Electronic Filing (NEF) to all parties in the case who are

6   registered users of the CM/ECF system.  The NEF for the foregoing specifically

7   identifies recipients of electronic notice.

8

Dated:  May 19, 2023

9                                   s/ Gregory L. Watts

10                                 Gregory L. Watts, WSBA #43995

11

12

13

14

15

16

17

18

19

20

21

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699