Hon. Stanley A. Bastian

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NATIONAL CENTER FOR PUBLIC POLICY
RESEARCH,

Plaintiff,

v.

HOWARD SCHULTZ, ET AL.,

Defendant.

Case No.: 2:22-CV-00267-SAB

RESPONSE TO DEFENDANT STARBUCKS
CORPORATION'S MOTION TO DISMISS
COMPLAINT

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# TABLE OF CONTENTS

I. SUMMARY .................................................................................................1

II. LEGAL STANDARDS ...............................................................................3

III. ARGUMENT .............................................................................................4

    A. The Plaintiff Fairly and Adequately Represents the Interests of
       Starbucks' Shareholders ...................................................................4

        1. Nothing Personal .........................................................................5

        2. That's Not Vindictive ...................................................................7

        3. Mis-Diagnosis of Cause of Ongoing Harm to Corporation:
           Starbucks Blames the Whistleblower Instead of the
           Perpetrators .................................................................................9

        4. Starbucks Presents No Evidence of Lack of Shareholder
           Support for This Litigation .........................................................10

    B. The Plaintiff's Live Complaint Adequately Addresses the
       Directors' Wrongful Rejection of Its Demand to Comply with
       American Non-Discrimination Law ...............................................12

        1. Rule 23 Makes Demand the Rule, and Futility a Narrow
           Exception, not the Reverse ..........................................................12

        2. Sufficiency of Plead Description of Directors' Wrongful
           Rejection .....................................................................................14

    C. Verification of the Plaintiff's Complaint .......................................18

IV. CONCLUSION ........................................................................................18

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

The Plaintiff responds (in this "<u>Response</u>") that the Court should deny Defendant Starbucks Corporation's Motion to Dismiss (the "<u>Motion</u>"),[1] identify any amendments to the live complaint it will require, and – following such amendment – allow all the claims advanced to move forward.

## I. SUMMARY

Starbucks Corporation ("<u>Starbucks</u>") advances three substantive arguments for the dismissal of this action: (a) the purported inadequacy or unfairness of having the Plaintiff represent Starbucks' shareholders; (b) the supposed insufficiency of the Plaintiff's allegations concerning Starbucks' board of directors' rejection of the Plaintiff's demand that it stop systematically violating a host of long-standing non-discrimination laws; and (c) the Plaintiff's failure to verify its complaint at filing.[2]

None of these arguments justify the requested dismissal. Most are groundless. Even those that have *any* merit, at most, would counsel the Court to order the Plaintiff to file an amended complaint. The Plaintiff readily represents that it will file such a pleading, as soon as the Court specifies the proper range of amendments it will require for this matter to move forward into discovery.

Starbucks' arguments for the Plaintiff's inadequacy or unfairness as a representative stockholder are meritless. Starbucks clearly disapproves of the Plaintiff's charitable purpose of defending the interests of America's small

---

[1] Dkt. 19.

[2] The Motion also asks the Court to dismiss this action "for the reasons stated in the Individual Defendants' motion to dismiss." Dkt. 19, p. 20, ll. 16-17 (joining in arguments advanced in Dkt. 20 (the "<u>Individual Defendants Motion</u>"). The Plaintiff responds to Individual Motion separately in parallel response filed contemporaneously with this Response (the "<u>Response to Individual Defendants Motion</u>"), but incorporates the substance of the Response to Individual Defendants Motion into this Response by reference.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 1
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  stockholders, but that disapproval neither transforms this purpose into a "personal"

2  grudge, nor indicates that the Plaintiff has not raised the issues it has in this litigation

3  in service of the mutual interests the Plaintiff shares with its fellow Starbucks

4  stockholders as stockholders. Starbucks' interpretation of "vindictiveness" is self-

5  refuting and would prevent any shareholder from ever challenging any policy

6  adopted by management through litigation. Starbucks' assertion that the Plaintiff's

7  requested remedy would harm the corporate enterprise audaciously blames the

8  ongoing harms the board's policies continue to work on a shareholder's efforts to

9  halt that ongoing harm, as if noticing the problem – rather than refusing to address

10  it – creates it. And Starbucks' claim that the Plaintiff lacks shareholder support for

11  this action is unsupported by any relevant fact, tethered instead to irrelevancies.

12       Starbucks' denial of the sufficiency of the Plaintiff's allegations concerning

13  the board's rejection of the Plaintiff's demands are only marginally stronger.

14  Starbucks advances that denial through a coupled pair of arguments. First, Starbucks

15  asks the Court to turn Federal Rule of Civil Procedure 23.1 on its head, allowing a

16  narrow exception to the requirement that derivative-action plaintiffs take up their

17  demands with management before running to court to swallow that rule in its

18  entirety. The Court should not accept this invitation. Assuming that it will, however,

19  Starbucks moves on to argue that the Court should consider only the narrow context

20  of the board's rejection of the Plaintiff's demands, deferring to their rejection as a

21  business judgment reasonably reached. This argument ignores settled corporate law,

22  relies on unsupported implications, and misrepresents documents Starbucks

23  encourages the Court to consider under judicial notice. Nonetheless, to the extent the

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 2
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Court agrees that Starbucks has raised a legitimate deficiency in the Plaintiff's live complaint, the Plaintiff will happily amend to more clearly express how settled corporate law renders the board's rejection of the Plaintiff's demands wrongful.

Finally, while the Plaintiff concedes that – for the duration of this action's removal to the federal courts – Federal Rule of Civil Procedure 23.1 requires verification of its complaint, it highlights that this is an eminently curable defect. The Plaintiff will amend to verify its complaint as soon as the Court has clarified whether there are any additional amendments it will require before this litigation moves forward to discovery.

Taken as a whole, the Motion presents nothing like a basis for dismissal of this meritorious action. Accordingly, and again bracketing the few, small exceptions detailed in the Plaintiff's contemporaneously filed brief, the Court should refuse to dismiss the Plaintiff's claims. The Court should, at most, treat the Motion as one pursuant to Rule 12(e) and order the Plaintiff to file a clarified amended Complaint, like that the Plaintiff has offered to file.

## II. LEGAL STANDARDS

The familiar standard governing the Motion is that established by the Supreme Court in *Twombly* for all motions pursuant to Federal Rule of Civil Procedure 12(b): the challenged pleading must provide a short and plain statement that provides defendants with notice of the claims being asserted, and supply enough factual matter, taken as true, to suggest a violation.[3] The Supreme Court explained in *Twombly* that a complaint is "not require[d to include] heightened fact pleading of

---

[3]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 3

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

specifics, but only enough facts to state a claim to relief that is plausible on its face."[4] In determining whether a complaint alleges a plausible claim, a court must accept as true all well-pled facts, viewing them in the light most favorable to the plaintiff.[5]

So long as this removed derivative action remains in the federal system, Federal Rule of Civil Procedure 23.1 will add additional wrinkles, requiring that: (a) the complaint be verified; (b) it allege that the Plaintiff's interest pre-dated the complained of actions; (c) it allege that the action is not collusive; (d) it state with particularity the effort undertaken to obtain corrective action from the directors (or why no such action was taken); and (e) the Plaintiff "fairly and adequately represent the interests of shareholders … who are similarly situated[.]"

### III. ARGUMENT

### A. The Plaintiff Fairly and Adequately Represents the Interests of Starbucks' Shareholders

Starbucks does not deny that the live complaint properly alleges that the Plaintiff's shares pre-date the adoption of the policies at issue, does not contend that this suit is collusive, and does not assert that the Plaintiff failed to seek corrective action from Starbucks' directors before filing suit.

Instead, the Motion primarily contends that the Plaintiff cannot "fairly and adequately represent the interests of shareholders … who are similarly situated[.]" According to Starbucks, the Plaintiff cannot so represent the interests of shareholders like itself, because of its "personal" interests in this litigation,[6] its "vindictiveness"

---

[4]  *Id.* at 570.
[5]  *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).
[6]  Motion, p. 10, l. 1 – p. 12, l. 3.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 4

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

against Starbucks,[7] the harm the Plaintiff's proposed remedy would allegedly "cause" the company,[8] and the purported lack of shareholder support for the litigation.[9]

As explained in detail below, these contentions are meritless. The Plaintiff's interest in this litigation (including the interests caricatured by Starbucks in the Motion) is not "personal." What Starbucks calls "vindictiveness" is not vindictive. Starbucks misplaces the blame for the harms at issue on the Plaintiff, as if a whistleblower causes the underlying harm rather than the directors who refuse to comply with longstanding, clear laws against racial discrimination. And Starbucks presents precisely *no* evidence for its contention that its shareholder body opposes this litigation, instead citing to irrelevancies.

### 1.    Nothing Personal

Starbucks first argument against the Plaintiff's ability to fairly and adequately represent the interests of its fellow shareholders focuses on what Starbucks describes as the Plaintiff's "personal agenda" and "ulterior motives" – waging a "crusade against corporate America's DEI efforts[.]"[10] As proof of this "personal agenda," Starbucks raises the Plaintiff's parallel demands to other corporations challenging "policies similar" to those at issue in this litigation, including "Dropbox, JP Morgan Chase, Levi & Strauss, McDonald's, Novartis, Pfizer, and American Airlines."[11]

---

[7]    Motion, p. 12, l. 5 – p. 13, l. 16.
[8]    Motion, p. 13, l. 18 – p. 16, l. 2.
[9]    Motion, p. 16, l. 4 – p. 17, l. 15.
[10]    Motion, p. 10, ll. 9-10 (citing *Smith v. Ayers*, 977 F.2d 946, 949 (5th Cir. 1992) and p. 12, ll. 1-2.
[11]    Motion, p. 11, ll. 19-20.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 5
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

But the Plaintiff is a federally recognized charity whose public purpose includes the defense of shareholder interests.[12] The Plaintiff's allegedly "personal," "ulterior" motive is no more than Starbucks' editorial gloss on the Plaintiff's charitable purpose – serving the investing public, by seeking to assure that fiduciaries pursue value maximization for their investors. That purpose is *exactly* consistent with the interests of the Plaintiff as a Starbucks shareholder and of the class of Starbucks' shareholders as shareholders. The fact that the Plaintiff has raised similar concerns with the management of other large corporations underscores that its objections to the policies at issue are *not* personal or driven by any particular "ulterior motive" adverse to Starbucks.

Starbucks' citation to the *Ayers* case is illustrative of exactly how far afield the current situation lies from an actual suit in which personal agendas render a filing plaintiff unfit to represent shareholders in a derivative action. There, the filer and defendant were "on opposite sides of the emotionally charged feuds between [two] families."[13] The instant litigation followed so extensive a series of precursors that "[a] catalog of the various lawsuits between these two parties and their affiliates would consume well over a full page."[14] Even though "those lawsuits [bore] no direct relationship to the instant case," the Court of Appeals took them to "suggest the virulent antagonism [filer] he]ld[ ] for" the defendant, an antagonism the filer

---

[12] As the Plaintiff's "Free Enterprise Project" explained its charitable purpose in its 2020 Value Voters Guide, "we believe in strong property rights and a large and well-functioning private sector. This makes shareholder activism a great fit for us. Shareholders are simply proportional owners of the companies in which they own shares. It's entirely right and proper that they – we – as owners should have our voices heard in how the companies are run."

[13] *Ayers*, 977 F.2d at 949.

[14] *Id.*

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 6
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

could not keep out of its pleadings, which were "peppered with vituperative epithets, pugilistic metaphors, and descriptions of [the defendant] as 'satanic' and 'evil.'"[15]

There is simply no valid comparison between such a situation and the case before the Court. The Plaintiff is a 501(c)(3) seeking to protect the value of its Starbucks stock and, in so doing, pursuing both its recognized charitable purpose and the interest of its fellow shareholders. It has no family feud with any director of Starbucks or with Starbucks as an enterprise. It has no prior history of litigation with any director of Starbucks or with Starbucks as an enterprise. Its live complaint is a measured, straight-forwardly plead document, devoid of any "vituperative epithets, pugilistic metaphors, and descriptions of [any of the defendants] as 'satanic' and 'evil.'"

The Court should not accept Starbucks' contentions to the contrary. It simply cannot be that an organization that exists under federal law for the purpose of giving voice to shareholders' concerns could be barred by the federal rule against shareholders misusing derivative actions to advance personal interests from giving voice to shareholder concerns.

## 2.    That's Not Vindictive

Starbucks next advances the related argument that the Plaintiff's "vindictiveness toward the defendant" renders it incapable of fairly and adequately representing the interests of its fellow shareholders in this litigation. As proof of the Plaintiff's alleged "vindictiveness," Starbucks points to the Plaintiff's cause of action (Claim 6) challenging the Individual Defendants' adoption of the policies at issue as

---

[15]    *Id.*

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 7

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

non-pecuniary examples of self-dealing.[16] Starbucks also claims as evidence of the Plaintiff's "vindictiveness" both: (a) its public statements of opposition to racial discrimination;[17] and (b) its publishing of an Investor Value Voter Guide.[18] Respectively, none of this speaks of vindictiveness of any kind.

The first argument literally faults the Plaintiff for describing a theory of the breach of fiduciary duty at issue in this litigation. That cannot be what "vindictiveness" means as a justification for holding a filer to be incapable of fairly and adequately representing shareholder interests. If describing the purported breach constitutes "vindictiveness," then literally *no* shareholder could *ever* bring a derivative suit, making a mockery and a nullity of Rule 23.1.

Nor does the rest of Starbucks' argument that the Plaintiff is "vindictive" fare better. Again, *Ayers* is instructive. There, the Court quoted the filer as having "stated that he [wa]s committed to 'ruin ten years of [the defendant's life], … and he—if he thinks this is even the end of the tenth round, I mean we're—we're not even in the first round.'"[19] Disapproving of discriminatory policies and publishing an investor guide to inform investors of policies that they should oppose if they, too, oppose them falls nowhere near the same category.

---

[16]    Motion, p. 12, ll. 10-12.
[17]    *Id.*, pp. 12-13.
[18]    *Id.* p. 13, ll. 5-13.
[19]    *Ayers*, 977 F.2d at 949.

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

### 3.     Mis-Diagnosis of Cause of Ongoing Harm to Corporation: Starbucks Blames the Whistleblower Instead of the Perpetrators

Then Starbucks faults the Plaintiff for allegedly seeking a remedy that would harm the company and its shareholders. Specifically, Starbucks attacks the Plaintiff's live complaint by arguing that if the Plaintiff obtains the declaratory judgments it seeks that the policies at issue in this case are illegal, that would harm the company and its shareholders. This argument spectacularly misses (indeed, reverses) the point of this litigation.

The Plaintiff seeks these declaratory judgments as a predicate for its claims that: (a) the Individual Defendants knowingly adopted, implemented, and retained illegal policies: (i) in violation of their fiduciary duties to Starbucks and its shareholders (in Claims 5 and 6); and (ii) without corporate authority (in Claim 7); and (b) the policies at issue should be enjoined (in Claim 8).

For the purposes of Starbucks' Rule 12 Motion, the Court must take the Plaintiff's allegations as true, including its allegations that the Individual Defendants adopted, implemented, and retained policies they knew and know are illegal. The *harm* Starbucks complains that the Plaintiff would work on the company and its shareholders in obtaining declaratory judgments to that effect arises *entirely* from the adoption, implementation, and retention of illegal policies, not from the Plaintiff having blown the whistle and come to Court seeking to enjoin *more* illegal behavior before such *additional* illegal behavior generates *even more* ruinous losses for the company and its shareholders.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 9
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    This is precisely why federal law protects whistleblowers. It is entirely

2    consistent with a longstanding consensus that shareholders have the power to halt

3    lawbreaking by their agents before it is too late.[20] Starbucks' contention to the

4    contrary is no argument against the Plaintiff's ability to fairly and adequately

5    represent the interest of its fellow shareholders in this litigation.

6    **4.    Starbucks Presents No Evidence of Lack of Shareholder Support for This Litigation**

7

8    Finally, Starbucks asserts that the Plaintiff lacks shareholder support for this

9    litigation. It cites to the position on related matters of the management of two of the

10   largest passive-investment funds in America.[21] And it cites to a series of shareholder

11   initiatives the Plaintiff has proposed in the past, which have been rejected by

12   Starbucks' shareholders.[22]

13   The legality of the program pushed on corporate America by these entities is

14   currently the subject of debate across the state legislatures, in Congress, and in the

15   Courts.[23] The compatibility *with their own* fiduciary obligations of "passive" shops

16

17   [20]   E.g., Norward P. Beveridge, Does the Corporate Director Have a Duty Always to Obey the Law?, 45 DePaul L. Rev. 729, 730 (1996) (citing *Miller v. AT&T*, 507 F.2d 759, 762 (3rd Cir. 1974) ("The conventional wisdom seems to be that the share-holders may have the right to hold the board of directors liable if it was the directors that caused the corporation to break the law"). *See also*, Thomas A. Uebler, Shareholder Police Power: Shareholders' Ability to Hold Directors Accountable for Intentional Violations of Law, 33 Del. J. Corp. L. 199, 216 (2008) ("To succeed in a derivative claim alleging intentional violation of law, the plaintiff should first be required to prove that the directors acted illegally.... The Delaware Court of Chancery, based on the evidence presented, would make the determination regarding illegality.").

21   [21]   Motion, p. 16, l. 8 – p. 17, l. 6.

22   [22]   Motion, p. 17, ll. 7-10.

23   [23]   E.g., Charles Donefer, Thomson Reuters, *State ESG Laws in 2023: The Landscape Fractures* (May 31, 2023); see also: *Alliance for Fair Board Recruitment v. SEC*, 5th Circuit Case No. 21-60626 (in which 2 private plaintiffs and 17 state Attorney Generals contest the SEC's approval of NASDAQ's change to its listing requirements, which both NASDAQ and the SEC justified in part by pointing to the support of BlackRock, State Street, and Vanguard).

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 10

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

taking funds from those told they were so investing in "the market" and then using those funds to press for changes to the market, including through pressing corporations to adopt specific policies (including the illegal policies at issue in this litigation) is not before the Court in this litigation, but it is hotly contested. To say the least, there is a material question whether the nominal holders of those Starbucks' stocks speak for their beneficial holders when they take the positions they have in support of such policies. Whether they do or don't, those funds control approximately fourteen percent (14%) of Starbucks' outstanding stock – put differently, they *do not speak for approximately eighty-six percent (86%)* of Starbucks' stockholders. Their position cannot be taken as determinative of what the broader class of Starbucks' shareholders do or don't support.

More importantly for the question before the Court, however, the Plaintiff's resolutions voted down in 2019,[24] 2020,[25] and 2023[26] share one vital feature: none of them address any of the policies at issue in this litigation. The Plaintiff did not sue Starbucks or the Individual Defendants concerning any policy approved by the shareholders in those votes. The Plaintiff, instead, has sued the Individual Defendants on behalf of Starbucks only over their adoption, implementation, and retention of illegal, discriminatory policies.

As a whole, Starbucks has neither suggested (nor provided any evidence supporting) a conclusion that its shareholders favor these policies of illegal discrimination. Even if it had, the adoption, implementation, and retention of

---

[24] Motion, p. 5, ll. 10-16.
[25] Motion, p. 5, l. 17 – p. 6, l. 3.
[26] Motion, p. 6, ll. 4-9.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 11

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

policies violating longstanding state and federal laws would *still* constitute a breach of the Individual Defendants' fiduciary obligations, taken without proper corporate authorization. Even were it true that the racial discrimination Starbucks has chosen to pursue were popular (which the Plaintiff does not believe it to be), that would not make it legal or consistent with the Individual Defendants' duties of loyalty and care for them to pursue.

**B. The Plaintiff's Live Complaint Adequately Addresses the Directors' Wrongful Rejection of Its Demand to Comply with American <u>Non-</u>Discrimination Law**

> **1.    Rule 23 Makes Demand the Rule, and Futility a Narrow Exception, not the Reverse**

Starbucks argues that the Plaintiff should be stuck with the Individual Defendants' decision to reject its demands, because "[b]y making the Demand upon the Company's Board, Plaintiff conceded that the Board was sufficiently disinterested and independent to consider it."[27] The argument asks the Court to allow the narrow exception of demand futility to swallow the rule that plaintiffs must make demand on management – and see their demands rejected – before seeking the judiciary's intervention in corporate matters.

Rule 23.1 requires the filer of a derivative action to state with particularity the effort undertaken to obtain corrective action from the directors (or explain why no such action was taken).[28] This aligns the Rule with the black-letter requirement that shareholders first address their concerns to corporate management, before running

---

[27]    Motion, p. 18, ll. 7-9.

[28]    Fed. R. Civ. P. 23.1(b)(3). Washington law includes the same structure. RCW 23B.07.400(2).

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 12
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

to the courthouse steps. Yes, the Rule includes, in its allowance of an explanation for skipping that step, room for the "futility rule." But demand futility remains an exception to the principal that shareholders should first take their complaints to management.

It would make no sense to read Rule 23.1 as Starbucks does, so incentivizing every derivative-action plaintiff to allege demand futility. Nothing in the Rule compels such a reading. No reasonable policy end would be served by such a reading.

Plaintiffs, including the Plaintiff, should not be faulted or disadvantaged for allowing for the possibility that a board of directors will respond to a demand to comply with clear law by altering its policies to comply with clear law. Indeed, even if the Individual Defendants unfortunately refused to take that obvious step, large corporations have been known to do the contrary.[29]

No corporation should want (and the Court should reject) an interpretation of Rule 23.1 that would deny shareholders and companies the chance to resolve such differences without rushing into Court with what may have been unnecessary litigation.

---

[29] E.g., *UPDATE: Racism and Sexism No Longer Making It ... with Lowe's*, (Aug. 15, 2022) (https://www.americancivilrightsproject.org/blog/update-racism-and-sexism-no-longer-making-it-with-lowes/); *UPDATE: Coca-Cola's Widely Disseminated Outside Counsel "Guidelines" "Have Not Been and Are Not Policy of the Company"*, (Mar. 25, 2022) (https://www.americancivilrightsproject.org/blog/update-coca-colas-widely-disseminated-outside-counsel-guidelines-have-not-been-and-are-not-policy-of-the-company/).

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 13

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

### 2.    Sufficiency of Plead Description of Directors' Wrongful Rejection

But assume that Starbucks is right and that this leaves "the only issues to be examined … the good faith and reasonableness of [the Board's] investigation." On that basis, Starbucks argues that the Court must dismiss this action, because the Plaintiff has allegedly failed to assert that the Individual Defendants wrongly refused its demand that Starbucks comply with American non-discrimination law. Starbucks argues that the "business judgment examined by a court for purposes of Rule 23.1 in a wrongful refusal derivative lawsuit is not the underlying decisions or actions by the alleged wrongdoers … but the board's exercise of its business judgment in refusing the demand."[30] In further defense of that decision, Starbucks highlights that its rejection letter represents that "[t]he Board engaged outside counsel, management, and relevant subject matter experts to assist it in evaluating the Demand's contentions."[31]

But even if this rule applies, the Plaintiff has clearly plead that the Individual Defendants chose to *retain* the policies at issue with knowledge of their illegality. Most specifically, in paragraph 130, the Plaintiff has plead that "to the extent that any [of the Individual Defendants] lacked knowledge of the illegality of the Policies at their adoption and implementation (and managed to lack such knowledge without having breached their duty of due care by failing to inquire as to the legality of the Policies), every such [Individual Defendant] breached their duties of loyalty, good faith, and due care in *retaining* the policies after learning of their illegality. Every

---

[30]    Motion, p. 18, ll. 4-11 (citing *Spiegel v. Buntrock*, 571 A.2d 767, 767 (Del. 1990).
[31]    Motion, p. 19, ll. 1-3.

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 14
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

[Individual Defendant] had such knowledge by no later than their receipt of" the Plaintiff's "Demand Letter on March 31, 2022."

The Individual Defendants' decision to retain the policies from and after March 31, 2022 obviously, necessarily includes their decision to reject the Plaintiff's demands in July 2022. And it has long been clear, in Washington, in Delaware, and elsewhere, that the business judgment rule does not shield law-breaking. Washington Courts have rejected assertions of the business judgment rule to shield intentional violations of law for more than a decade.[32] "Nor[,] according to the Washington Supreme Court, "does the business judgment rule insulate corporations from liability for illegal acts[,]" a conclusion it based on one such prior appellate decision having held that "the business judgment rule does not apply to corporate officers' decisions that violate state law").[33]

The choice to reject a demand to stop violating the law is necessarily a decision to continue to violate the law. The settled corporate law of Washington (like that of Delaware) denies the Individual Defendants the shielding of the business judgment rule for that decision. If the policies at issue are illegal (the central question in this litigation), Starbucks' directors' rejection of the Plaintiff's demand is per se unreasonable and a bad-faith decision. Far from an "out," Starbucks argument merely restates why they are entitled to no deference in their wrongful rejection decision.

---

[32] *Durand v. HIMC Corp.*, 214 P.3d 189, 199 (Wash. App. 2009) (denying application of business judgment rule as defense, "because the legislature has specifically expressed the public policy" by outlawing the challenged corporate behavior).

[33] *Bangerter v. Hat Island Cmty. Ass'n*, 2002 Wash. LEXIS 118, *24-*25 (Wash. 2022).

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 15

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Starbucks goes further, highlighting that "[s]ince 2019, Starbucks has commissioned and published periodic objective civil rights assessments by former U.S. Attorney General Eric Holder,"[34] with the seeming implication that these documents reflect the legality of the policies at issue. Similarly, Starbucks emphasizes that its board "engaged outside counsel, management, and relevant subject matter experts to assist it in evaluating" the Plaintiff's demands.[35] But Starbucks' appeals to authority changes none of this. Both the rejection letter and the Motion fail to suggest that *any* of the "authorities" Starbucks' directors "consulted" told the Individual Defendants *anything different* than did the Plaintiff's demand letter. Neither the rejection letter, nor the Motion, *actually deny* the Individual Defendants' actual knowledge of the illegality of the challenged policies.

Nor do the Holder "assessments" actually speak to the legality of the policies at issue. While the Motion references those "assessments" as a series, Starbucks attached only the last such "assessment" as an exhibit to the Motion.[36] But, the Court may take the same judicial notice of the prior "assessments" in the series, located at: https://stories.starbucks.com/uploads/2019/01/Covington-Report-to-Starbucks-Jan-23-2019.pdf (the "2019 Assessment") and https://stories.starbucks.com/uploads/2020/02/Starbucks-Civil-Rights-Assessment-2020-Update.pdf (the "2020 Assessment"). When the Court reviews all three, it will notice that *none* is an opinion letter. It will notice that *none* addresses the legality of any policy at issue in this litigation. It will notice that the *only* legal opinion offered

---

[34] Motion, p. 19, ll. 16-18.
[35] Motion, p. 19, ll. 1-3.
[36] Dkt. 22, Exh. 3 (the "2021 Assessment").

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 16
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  in *any* of the "assessments" addresses only the sufficiency of "Starbucks' EEO

2  statement and 'Harassment and Discrimination Prohibited policy," without ever

3  opining on Starbucks' *compliance* with that policy.[37] While the 2019 "assessment"

4  reports that "we evaluated whether existing programs complied with applicable laws

5  and whether they were sufficient to foster equity, diversity, and inclusion[,]" it never

6  actually discusses the first or reports any conclusions on the legality of any Starbucks

7  program. Instead, it advances a purported "business case for workplace diversity."[38]

8  And academics – including academics who want *more* diversity programming –

9  have warned for years that the "business case for workplace diversity" is irrelevant

10  to the *legality* of any policy of racial discrimination.[39]

11      Taken together, then, the Plaintiff has adequately plead the wrongful rejection

12  of its demand and nothing in the Motion persuasively argues differently. However,

13  to the extent the Court rules that the Plaintiff's allegations are insufficiently clear in

14  the live complaint, the Plaintiff will gladly, promptly amend to more specifically

---

17  [37]  2019 Assessment, p. 40.

18  [38]  *Id.*, pp. 30-31.

19  [39]  E.g., Stephen M. Rich, *Whose Diversity? The Contest Over the Law and Culture of Work*, 39 Berkeley J. Emp. & Lab. L. 177, 200 (2018) (recognizing that "Title VII entertains only two exceptions to the rule that an employment practice is unlawful if it uses preferences based on an individual's protected status[:]" bona fide occupational qualifications necessary to operate the business and (with further qualification, remediation of past discrimination; but diversity is not remedial and "…an employer's motivation to pursue diversity – whether to improve the representation of certain groups within its workforce or to realize some incremental improvement in its performance – will not render an employee's status necessary to fulfill the essence of the business."); Stacy L. Hawkins, *A Deliberative Defense of Diversity: Moving Beyond the Affirmative Action Debate to Embrace a 21st Century View of Equality*, 2 Colum. J. Race & L. 75, 83 (2012) (acknowledging, and bemoaning, the irrelevancy to Title VII of "other instrumental purposes" such as the business-case for diversity, given that "the only such instrumental purpose reflected in the legislative history or judicial interpretation and enforcement of affirmative action is a remedial purpose.").

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 17

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

plead how the Individual Defendants' choice to reject the Plaintiff's demand was illegal, and therefore a wrongful rejection.

## C. Verification of the Plaintiff's Complaint

On the other hand, Starbucks raises one entirely valid failing of the live complaint. Starbucks correctly identifies that Rule 23.1, which governs this action as long as it remains in the federal courts – requires a complaint asserting a derivative action to be verified.

The Plaintiff concedes this point. The Plaintiff will attach a verification when it amends its complaint. To avoid any unnecessary congestion of the Court's docket, the Plaintiff will hold off on filing an amended complaint including such a verification until the Court's rulings on the Motion and on the Individual Defendants Motion have clarified whether the Court will require any additional amendments to the live complaint before allowing this matter to move forward into discovery.

## IV.  CONCLUSION

The Plaintiff asks the Court to deny the Motion's request for dismissal and to clarify what, if any, amendments to the Plaintiff's live complaint (beyond verification) it deems proper, in an order requiring the Plaintiff to amend and provide a more definite statement within fourteen (14) days.

///
///
///
///
///
///

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS - 18

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  June 22, 2023.

2  ARD LAW GROUP PLLC                    -AND-

3                                         THE AMERICAN CIVIL RIGHTS

4  By:  _____           PROJECT

   Joel B. Ard, WSBA # 40104             Daniel I. Morenoff,
5  P.O. Box 11633                        *Admitted pro hac vice*
   Bainbridge Island, WA 98110           P.O. Box 12207
6  206.701.9243                          Dallas, Texas 75225
   Joel@Ard.law                          (214) 504-1835
7                                         dan@americancivilrightsproject.org

8
   Attorneys For Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

RESPONSE TO STARBUCKS CORPORATION'S
MOTION TO DISMISS
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on June 22, 2023, I electronically filed the foregoing

3  Response to Starbuck's Motion to Dismiss in *NCPPR v. Schultz*, No. 2:22-CV-

4  00267-SAB(E.D. Wash.) with the Clerk of the Court using the CM/ECF System,

5  which in turn automatically generated a Notice of Electronic Filing (NEF) to all

6  parties in the case who are registered users of the CM/ECF system. The NEF for the

7  foregoing specifically identifies recipients of electronic notice.

8

9                            Ard Law Group PLLC

10

11

12       By: _____

13                            Joel B. Ard, WSBA # 40104
                             P.O. Box 11633
14                            Bainbridge Island, WA 98110
                             206.701.9243
15                            Joel@Ard.law
                             Attorneys for Plaintiff
16

17

18

19

20

21

22

23

CERTIFICATE OF SERVICE

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243