Hon. Stanley A. Bastian

1

2

3

4          UNITED STATES DISTRICT COURT

5          EASTERN DISTRICT OF WASHINGTON

6   NATIONAL CENTER FOR PUBLIC POLICY
    RESEARCH,
7                                               Case No.: 2:22-CV-00267-SAB
                Plaintiff,
8                                               RESPONSE TO INDIVIDUAL DEFENDANTS'
        v.                                      MOTION TO DISMISS COMPLAINT
9   HOWARD SCHULTZ, ET AL.,
10              Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - i
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1

## TABLE OF CONTENTS

2   I. SUMMARY .................................................................................1

3   II. LEGAL STANDARDS ...................................................................3

    III. ARGUMENT ...............................................................................3

4       A. The Motion's Jurisdictional Arguments are Substantively Meritless........3

5           1. Plaintiff's Standing and Claims 1-4 ..................................3

            2. Conflation of Contingency with Liquidation and Propriety of
6              Trial Courts Liquidating Non-Contingent Claims ......................6

7           3. Movants' Demonstration and Denial of Case's Public
               Importance.................................................................9

8       B. Clear Corporate Law Bars the Individual Defendants from
           Sheltering Under the Business Judgment Rule .........................10

9           1. Inapplicability of the Business Judgment Rule.........................11

10          2. Availability of Ultra Vires Action .................................12

            3. Remaining Business Judgment Rule Arguments Equally
11             Flawed......................................................................13

        C. Clear Inapplicability of Cited Exculpation Provision .........................15
12
            1. Facial Relationship of Plead Facts and Quoted Provision.............15
13
            2. Groundlessness and Irrelevance to a 12(b) Motion of
14             Remaining Exculpation Arguments .................................16

        D. Sufficiency of Allegations to Meet Twombly Standard ..........................18

    IV. CONCLUSION ...........................................................................19

15

16

17

18

19

20

21

22

23

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - ii

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    The Plaintiff responds (in this "Response") that the Court should deny the

2    Individual Defendants' Motion to Dismiss (the "Motion"),[1] identify any

3    amendments to the live complaint it will require, and – following such amendment

4    – allow all the claims advanced by the Plaintiff to move forward.

5                                 **I. SUMMARY**

6        The individual filers of the Motion (the "Individual Defendants") advance four

7    arguments for dismissal: (a) the Plaintiff purportedly lacks standing to pursue Claims

8    1-4 (which claims purportedly lack ripeness); (b) the business-judgment rule

9    purportedly shields the Individual Defendants from liability under Claims 5-8; (c) a

10   corporate exculpation provision purportedly shields the Individual Defendants from

11   liability under claims 5-8; and (d) the Plaintiff has purportedly insufficiently

12   identified which Individual Defendants participated in the adoption, implementation,

13   and retention of the policies at issue (the "Policies").[2,3]

14       None of these arguments justify dismissal. Most are groundless. Those with

15   *any* merit, at most, would justify the Court ordering the Plaintiff to amend its

16   complaint. Should it, the Plaintiff will promptly amend, as soon as the Court specifies

17   the amendments it will require for this matter to move forward into discovery.

18       The Individual Defendants' standing and ripeness arguments in the Motion

19   misidentify the substance of the Plaintiff's first four claims, before misinterpreting a

20   clear Supreme Court precedent to wrongly deny the Plaintiff's standing to pursue

21

22

23

---

[1]   Dkt. 20.

[2]   The Motion also "join[s] in the Company's motion to dismiss." Motion, p. 20, ll. 14-15 (joining in Dkt. 19 (the "Starbucks Motion"). The Plaintiff responds to the Starbucks Motion in a contemporaneously filed response (the "Response to Starbucks Motion"), which it incorporates here by reference.

[3]   The Plaintiff uses the Individual Defendants' numbering of claims from the Motion.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 1

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

them. The Individual Defendants wrongly conflate the liquidation and contingency of the damages their actions continue to cause to argue that the Plaintiff's claims are not ripe. When these separate concepts are split, the argument is clearly wrong. Together with Starbucks, the Individual Defendants both blame their decisions to adopt, implement, and retain the Policies on the nationwide press of entities controlling the largest blocs of stocks in almost all the private economy, while simultaneously asserting that corporations bowing to such pressure presents no issue of "major public importance." In short, the Individual Defendants' jurisdictional arguments are substantively untenable.

The Individual Defendants' business-judgment rule arguments fare no better. They misstate settled corporate law.

The Individual Defendants' arguments concerning their exculpation rely on misrepresentations of the Plaintiff's allegations. The text of the live complaint and *the exculpation language quoted in the Motion* facially foreclose these arguments. The additional, related arguments the Individual Defendants advance for their exculpation are similarly groundless.

Finally, the Individual Defendants contend the live complaint contains insufficiently specific allegations concerning the Individual Defendants' involvement in the adoption, implementation, and retention of the policies at issue. That contention beggars belief. However, should the Court disagree, the Plaintiff will gladly amend to more clearly state which Individual Defendants participated in the adoption, implementation, and retention of the Policies

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 2
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    Taken as a whole, the Motion presents no basis for dismissal. The Court

2 should refuse to dismiss the Plaintiff's claims. The Court should, at most, treat the

3 Motion as one pursuant to Rule 12(e) and order the Plaintiff to file a clarified

4 amended complaint, like that the Plaintiff has offered to file.

## II.  LEGAL STANDARDS

6    The familiar standard governing the Motion is that established by the Supreme

7 Court in *Twombly* for motions pursuant to Federal Rule of Civil Procedure 12(b).

8 The challenged pleading must provide a short, plain statement that provides notice

9 of the claims being asserted, and supplies enough factual matter, taken as true, to

10 suggest a violation.[4] *Twombly* explains that a complaint is "not require[d to include]

11 heightened fact pleading of specifics, but only enough facts to state a claim to relief

12 that is plausible on its face."[5] In determining claim plausibility, a court must accept

13 as true all well-pled facts, viewing them in the light most favorable to the plaintiff.[6]

## III.  ARGUMENT

## A. The Motion's Jurisdictional Arguments are Substantively Meritless

### 1.    Plaintiff's Standing and Claims 1-4

18    The Motion's description of Claims 1-4 (and its denial of the Plaintiff's

19 standing to pursue them) wholly misses the mark. The Motion contends that these

20 claims seek to enforce solely employment laws and implies that the Plaintiff has

21 asserted – through these declaratory judgment actions – the same personalized

---

[4]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).
[5]    *Id.* at 570.
[6]    *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 3

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

grievance claims that individual Starbucks employees or job applicants would assert under those laws. Neither the contention nor the implication is true. Building on these errors, the Individual Defendants contend the Supreme Court's decision in *Thompson v. North Am. Stainless, LP* bars the Plaintiff's standing.[7] But the Motion misstates the facts and holding of *Thompson*, inverting its relevance to this litigation.

Through Claims 1-3, the Plaintiff seeks declaratory judgment that the Policies violate American employment law.

Specifically, Claim 2 asks for a declaration that Title VII precludes Policies: 1 (Starbucks' racial allocation of the company's future workforce), 3 (Starbucks' pegging of executive compensation to the progress achieved under Policy 1), 4 (Starbucks' "commitment" to "Increase the number of Black directors"), and 7 (Starbucks' "'launch [of] a Leadership Accelerator Program … available initially only to [Starbucks'] 'BIPOC [employees.]'"[8] The Individual Defendants contend the Plaintiff presents the same claims for particularized harms that discriminated-against individuals would bring under Title VII. It does not. The Plaintiff challenges *no* particular hiring or promotional decision. The Plaintiff seeks to recover *no* backpay owed any such individual. Through Claim 2, the Plaintiff challenges the *legality of the corporate policies themselves*, as a predicate for Claim 4-8.

While Claims 1 and 3 overlap with Claim 2, they are broader. Claim 1 seeks a parallel declaration that – by making race a but-for cause of employment contracting decisions – the same Policies violate 42 U.S.C. § 1981. Claim 3 does the

---

[7]   562 U.S. 170 (2011).

[8]   The Plaintiff uses the Individual Defendants' numbering of Policies from the Motion.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 4

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   same for various states' non-discrimination laws. But Claims 1 and 3 also seek

2   declarations that the same statutes are violated by Starbucks' race-based contracting

3   Policies *outside* the employment sphere (specifically, by Policies: 2 (Starbucks'

4   rollout of a mechanism to facilitate racial decision making), 5 (Starbucks'

5   reallocation of $750 million in supplier contracts based on the race of its

6   counterparties), and 6 (Starbucks' reallocation of 15% of its advertising budget

7   based on the race of its counterparties).

8        Claim 4, on the other hand, seeks a declaratory judgment that the Policies,

9   cumulatively, create material liabilities. Claim 4 itself *does not* seek a judgment

10  under Title VII or any other statute.

11       Despite the Individual Defendants' contentions, the *Thompson* decision

12  demonstrates the Plaintiff's Article III standing. The language the Individual

13  Defendants quote from *Thompson* – "that it would be 'absurd' for a shareholder to

14  have standing to bring a Title VII claim as a 'person aggrieved' simply by showing

15  his stock value decreased as a consequence of a discriminatory action" – was dicta.[9]

16  *Thompson* **was not** a shareholder suit. It involved an employee's retaliation claim

17  challenging his firing immediately after his co-worker-fiancé filed a discrimination

18  charge with the EEOC.[10] In it, the Supreme Court expressly held that: "Thompson's

19  claim undoubtedly meets" "the minimal Article III standing [requirement], which

20  consists of injury in fact caused by the defendant and remediable by the court."[11]

21  Specifically paralleling this conclusion, the Court highlighted (in dicta adjacent to

22

23  [9]   Motion, p. 5, ll. 14-19 (quoting *Thompson*, 562 U.S. at 177).
    [10]  *Thompson*, 562 U.S. at 172.
    [11]  *Thompson*, 562 U.S. at 175-176.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 5
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  the Motion's quoted language) that a shareholder, too, would be a "person injured
2  in the Article III sense by a Title VII violation[.]"

3      In *Thompson*, without limiting that Constitutional conclusion, the Court
4  "construed" Title VII's authorization of suits to challenge particularized, personal
5  employment decisions "more narrowly than the outer boundaries of Article III." That
6  expressly statutory holding *in no way limits* the standing of a shareholder Plaintiff,
7  who enjoys what the Supreme Court described in *Thompson* as clear Article III
8  standing, to bring an action under § 1981 or any state law. And it sheds little light
9  on the Plaintiff's standing to pursue Claim 2. There the Plaintiff brings *no* claim
10  parallel to that in *Thompson* for any individualized violation of Title VII. Instead,
11  Claim 2 seeks a declaratory judgment that the policies violate Title VII *only* as a
12  predicate for its claims for injunctive relief and for recovery by the company from
13  the Individual Defendants of the damages they have caused.

14      The Motion misuses a case establishing the Plaintiff's Article III standing to
15  argue that statutory language in Title VII prohibits the Plaintiff's pursuit of different
16  relief, including under different statutes (including even those passed by different
17  sovereigns). The Court should refuse the Individual Defendants' invitation to slam
18  the door on meritorious litigation based on no more than a proverbial rhyme.

19      **2.    Conflation of Contingency with Liquidation and Propriety of**
20      **Trial Courts Liquidating Non-Contingent Claims**

21      The Motion argues that the Plaintiff's claims are not ripe, lacking an "actual,
22  present, existing dispute or even the mature seeds of such a dispute."[12] It belittles
23

---

[12]   Motion, p. 7, ll. 13-20.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 6

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

the pandora's box of corporate liabilities the Individual Defendants have opened for Starbucks as a "daisy chain of speculation" that "does not establish that Plaintiff or Starbucks has suffered any injury in fact."

The Individual Defendants' argument conflates two related, clearly distinct concepts in the law of claims: the liquidation and contingency of damages. A claim is "contingent" when it "is one which the debtor will be called upon to pay *only upon the occurrence or happening of an extrinsic event* which will trigger the liability[.]"[13] A claim is "unliquidated," on the other hand, "when it is not 'subject to ready determination and precision in computation of the amount due.'"[14]

The Individual Defendants do not argue that the Plaintiff's claims are *contingent*. They do not deny their pursuit of the race-based Policies. They instead contend that the harms done are *unliquidated*, in that they have not yet been litigated through to liquidating judgments.[15]

---

[13]  *In re Ford*, 967 F.2d 1047, 1051 (5th Cir 1992) (emphasis in original); *see also Wongco v. Federated Dep't Stores, Inc.* (*In re R.H. Macy & Co.*), 67 Fed. Appx. 30, 32 (2nd Cir. 2003) ("we have determined that contingent claims encompass 'obligations that will become due upon the happening of a future event….'") (internal citations omitted).

[14]  *Camelback Constr. V. Castellino Villas, A.K.F. LLC* (*In re Castellino Villas, A.K.F. LLC*), 836 F.3d 1028, 1033 (9th Cir. 2016).

[15]  While this may be so, it is worth noting the $25.6 million judgment entered on June 14, 2023, in *Phillips v. Starbucks Corp.* against the company for a race-based firing. https://www.inquirer.com/news/philadelphia/starbucks-philadelphia-manager-white-verdict-philadelphia-black-men-arrests-20230614.html. In the Starbucks Motion, the company references a series of "assessments" it commissioned from former Attorney General Eric Holder. Starbucks attached only 1 of those "assessments" as an exhibit. Dkt. 22, Exh. 3. However, the Court may take the same judicial notice of the prior "assessments," including that at: https://stories.starbucks.com/uploads/2019/01/Covington-Report-to-Starbucks-Jan-23-2019.pdf. As that first "assessment" makes clear, the entire project (and the Policies) grew out of the same factual incident as *Phillips* litigation. To the extent the Policies formalized the decisionmaking of *Phillips*, the damages from the Policies would not even remain fully unliquidated at this time. The possible relationship between the *Phillips* judgment and the Policies is a proper subject for discovery.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 7

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

But there is nothing unusual about trials liquidating claims. So common is the liquidation of damages at trial that the Supreme Court of Washington has a stock jury instruction for the liquidation of damages specifically from fiduciary breaches.[16] Nor is it unheard of for shareholders fiduciary breach cases challenging illegal actions of officers and directors to proceed prosecutions by law enforcement. In *Kandell v. Niv*, a shareholder plaintiff filed suit alleging a fiduciary breach on December 15, 2015.[17] That breach arose when officers and directors "adopted a business plan premised on violations of" law.[18] Subsequently, the CFTC brought a related enforcement action on August 16, 2016.[19] With the harm-done unliquidated at the filing of the shareholder action and the related law enforcement action following it almost a year later, Vice Chancellor Glasscock did not dismiss the suit.

The Court should follow Vice Chancellor Glasscock and refuse the Motion's invitation to bar shareholders from halting their agents' lawbreaking until it is too late. So denying the Motion would be consistent with the longstanding consensus that shareholders have the power to bring exactly such actions.[20]

---

[16] WPI 107.11 Breach of Fiduciary Duty—Damages.

[17] 2017 Del. Ch. 640, *31 (Del. Ch. 2017).

[18] *Id.* at *16.

[19] *Id.* at *17.

[20] E.g., Norward P. Beveridge, *Does the Corporate Director Have a Duty Always to Obey the Law?*, 45 DePaul L. Rev. 729, 730 (1996) (citing *Miller v. AT&T*, 507 F.2d 759, 762 (3rd Cir. 1974) ("The conventional wisdom seems to be that the share-holders may have the right to hold the board of directors liable if it was the directors that caused the corporation to break the law"). *See also*, Thomas A. Uebler, *Shareholder Police Power: Shareholders' Ability to Hold Directors Accountable for Intentional Violations of Law*, 33 Del. J. Corp. L. 199, 216 (2008) ("To succeed in a derivative claim alleging intentional violation of law, the plaintiff should first be required to prove that the directors acted illegally…. The Delaware Court of Chancery, based on the evidence presented, would make the determination regarding illegality.").

RESPONSE TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 8

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

### 3.    Movants' Demonstration and Denial of Case's Public Importance

The Individual Defendants acknowledge that Washington courts take a broader view of standing when a "case presents an issue of major public importance."[21] They poo-poo this derivative litigation as doing nothing more than a piker's effort to "protect[ ] the value of … 56 shares of Starbucks[.]"[22] They argue that this exception may only apply "where the interest of the public … is overwhelming and where the issue has been adequately briefed and argued."[23]

The brazenness is breathtaking. While the Plaintiff owns 56 shares, it is a 501(c)(3) whose public purpose includes the defense of shareholder interests and whose actions in this case seek to protect the $118.9 billion market-capitalization of a company in which it has invested. The Starbucks Motion concedes both that: (a) two passive-investment firms (BlackRock and Vanguard) directly hold 14% of Starbucks stock;[24] and that those passive-investment firms have used investor funds to press companies like Starbucks to adopt policies like those at issue in this litigation.[25] Neither movant emphasizes that these same entities (along with State Street, another passive-investment firm that's two largest shareholders are BlackRock and Vanguard) control the largest blocs of shares in nearly the entire S&P 500 and, directly or indirectly, in 14 of America's 15 largest banks.[26]

---

[21] *Wash. St. Republican Party v. Wash. St. Pub. Disclosure Comm'n*, 141 Wash. 2d 245, 284 (Wash. 2000).

[22] Motion, p. 9, ll. 9-10.

[23] Motion, p. 8, ll. 18-20.

[24] Starbucks Motion, p. 16, ll. 8-10.

[25] Starbucks Motion, p. 15, l. 16 – p. 16, l. 6.

[26] E.g., Eric A. Posner, Fiona M. Scott Morton, and E. Glen Weyl, *A Proposal to Limit the Anticompetitive Power of Institutional Investors*, 81 Antitrust L.J. 669 (2017) ("When combined, BlackRock, Vanguard, and State Street constitute the single largest shareholder of at least 40 percent of all public

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 9

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

The legality of the program these entities pushed on corporate America presents an issue of major public importance. It is a subject of debate across the state legislatures, the Congress, and the Courts.[27] It is no 12(b)(6) argument to the contrary that an issue must be "adequately briefed and argued" to qualify. It highlights the importance of letting this case go forward and fully develop the issues at stake. Only an astonishing surfeit of brass could render that need an argument for dismissal.

## B. Clear Corporate Law Bars the Individual Defendants from Sheltering Under the Business Judgment Rule

The Individual Defendants argue for the dismissal of Claims 5-8 based on a contention that that their adoption, implementation, and retention of the Policies constitute "business judgments, protected by the business judgment rule."[28, 29] Long-settled corporate law begs to differ. To specifically argue against the applicability of the *ultra vires* doctrine, the Individual Defendants exactly reverse the meaning of a decision of the Supreme Court of Washington.[30] They then assert that non-parallel,

---

companies in the United States. They constitute the largest owner in nearly 90 percent of public companies in the S&P 500…"); Dan Morenoff, Break Up the ESG Investing Giants, *WSJ* (Aug. 31, 2022).

[27] E.g., Charles Donefer, *State ESG Laws in 2023: The Landscape Fractures*, Thomson Reuters (May 31, 2023); see also: *Alliance for Fair Board Recruitment v. SEC*, 5th Circuit Case No. 21-60626 (in which 2 private plaintiffs and 17 state Attorney Generals contest the SEC's approval of NASDAQ's change to its listing requirements, which both NASDAQ and the SEC justified in part by pointing to the support of BlackRock, State Street, and Vanguard).

[28] Claims 5 and 6 seek judgment that the Individual Defendants have breached their fiduciary duties to Starbucks and its shareholders. Claim 7 seeks judgment that the Individual Defendants have forced Starbucks to take ultra vires, illegal acts. Claim 8 seeks preliminary and permanent injunctions barring the continued implementation of the illegal policies. Accordingly, although the Individual Defendants have argued that the business judgment rule should shield them from liability under Claims 5-8, they must *mean* Claims 5-7 (as Claim 8 seeks to assign no liability).

[29] Motion, p. 9, ll. 14-15.

[30] Motion, p. 11, ll. 8-12.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 10

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

legal corporate policies make untenable the illegality of the Policies.[31] They complete this argument for dismissal by decrying the live complaint's supposed lack of specificity.[32] None of these arguments is persuasive.

### 1. Inapplicability of the Business Judgment Rule

It has long been clear, in Washington, in Delaware, and elsewhere, that the business judgment rule does not shield law-breaking. Washington Courts have rejected assertions of the business judgment rule to shield intentional violations of law for more than a decade.[33] "Nor[,] according to the Washington Supreme Court, "does the business judgment rule insulate corporations from liability for illegal acts[,]" a conclusion it based on one such prior appellate decision having held that "the business judgment rule does not apply to corporate officers' decisions that violate state law").[34] The Individual Defendants presumably know of these decision, as they cite the lower court opinion from 2020 that the Washington Supreme Court reversed last year. Delaware courts have reached the same conclusion.[35]

---

[31] Motion, p. 13, l. 9 – p. 14, l. 14.

[32] Motion, p. 14, l. 17 – p. 16, l. 20.

[33] *Durand v. HIMC Corp.*, 214 P.3d 189, 199 (Wash. App. 2009) (denying application of business judgment rule as defense, "because the legislature has specifically expressed the public policy" by outlawing the challenged corporate behavior).

[34] *Bangerter v. Hat Island Cmty. Ass'n*, 2002 Wash. LEXIS 118, *24-*25 (Wash. 2022).

[35] E.g., *City of Hialeah Emples. Ret. Sys. v. Begley*, 2018 Del. Ch. LEXIS 1442, *10-*11 (Del Ch. 2018) ("One reasonable inference from the facts pled … is that the defendants chose to … operate … in violation of law because that was the route to maximizing … profits. That decision would expose them to liability for acting in bad faith, which is a breach of the duty of loyalty. 'Delaware law allows corporations to pursue diverse means to make a profit, subject to a critical statutory floor, which is the requirement that Delaware corporations only pursue 'lawful business' by 'lawful acts.'") (citing *In re Massey Energy Co.*, 2011 Del. Ch. LEXIS 83 (Del. Ch. 2011).

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 11

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## 2.     Availability of *Ultra* Vires Action

The Individual Defendants seek to further their argument for the applicability of the business judgment rule (and to defuse the Plaintiff's challenge to their *ultra vires* adoption of the illegal Policies) based on *Harstene Pointe Maint. Ass'n v. Diehl*.[36] The Individual Defendants *precisely* reverse the meaning of that decision.

*Harstene Pointe* dealt with a home-owners' association's effort to impose and collect fines authorized by the HOA board operating while composed differently than required by its formative documents.[37] The Individual Defendants quote *Harstene Pointe* for the proposition that "'ultra vires' describes corporate transactions that are outside the purposes for which a corporation was formed and, thus, beyond the power granted the corporation by the Legislature."[38] The HOA board had argued in that case that the defendant "cannot challenge the composition of the" HOA board "because [the Washington statute under which the HOA was organized] limits the use of ultra vires" as a legal theory to situations where the HOA lacked any authority to act.[39]

But the Court of Appeals *rejected* that argument and sided with Diehl. "[T]o hold that such a challenge is barred by ultra vires would be to hold the regularly adopted corporate procedures a nullity. If, as [the HOA] suggests, [the Washington statute under which the HOA was organized] prevents Diehl's challenge, the

---

[36]   979 P.2d 854 (1999).

[37]   *Id.* at 855.

[38]   Motion, p. 11, ll. 8-11.

[39]   *Harstene Pointe*, 979 P.2d at 856.

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

corporation would be free to disregard its own bylaws…. In short, the corporate articles and bylaws would be largely meaningless."[40]

The Individual Defendants can't say that when they established the illegal Policies, that was fine, since it was all part of "the roasting, marketing, and retailing of specialty coffee[.]"[41] *Hersteine Pointe* demonstrates that challenges to *how* management pursues ends it is empowered to pursue as ultra vires are part of the corporate law of Washington. Choosing *means* outside the law – such as Policies dictating racial discrimination in contracting for supplies – is just as ultra vires as would be choosing *ends* outside the law – say, adopting a policy of selling meth at all locations. Again, the very case on which the Individual Defendants rely demonstrates why their argument fails.

### 3. Remaining Business Judgment Rule Arguments Equally Flawed

The Individual Defendants pursue one additional theory for why the business judgment rule should shield them from liability on claims 5-7. They argue that the legality of non-parallel policies of other corporations must mean that the business judgment rule applies here. They argue that "diversity initiatives such as representational goals" do not violate Title VII or other civil rights laws. They rely on cases holding: (a) that "the mere existence of a diversity policy, without more, is insufficient to make out a … case of … discrimination[;]"[42] (b) that "specific targets for the number of minority employees … and the company's stated objectives

---

[40] *Id.*
[41] Motion, p. 11, ll. 14-16.
[42] *Jones v. Bernake*, 493 F.Supp.2d 18, 29 (D.D.C. 2007).

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 13

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  indicated no more than that managers should be on the lookout for, or actively recruit

2  minority candidates when positions did become open"[;][43] and the like.

3      Respectfully, these cases are inapt. It is surely true that when specific

4  individuals aggrieved by discriminatory decisions made by Starbucks' agents in

5  compliance with the Policies bring their direct claims, they will need to plead and

6  prove that the specific decisions impacting them were discriminatory. But the

7  Plaintiff is not bringing those suits. The Plaintiff is challenging the Policies the

8  Individual Defendants have caused Starbucks to adopt, implement, and retain to

9  transform the racial balance of its workforce and contractual counterparties. That

10  challenges far more than "setting goals and recruiting candidates."

11      The Plaintiff has plead that the Individual Defendants announced their

12  intention to racially discriminate to achieve race-balancing and that they

13  subsequently published updates on their progress in achieving such race-balancing.

14  That is "something more" than "the mere existence of a diversity policy."

15      The Plaintiff has plead that the Individual Defendants – specifically, those that

16  are directors – created a Policy 3, so *expressly rewarding* executives for their success

17  in achieving such race-balancing. That operationalization makes clear that the

18  rewarded behavior was *not* recruiting candidates for open positions – it was

19  achieving a transformed racial balance, by whatever means.

20      More than that, the Individual Defendants' cited cases misidentify the current

21  state of Title VII law on the legality of elective "diversity plans."[44] The Plaintiff has

22  _____

23  43  *Blanke v. Rochester Tel. Corp.*, 36 F.Supp.2d 589, 597-98 (W.D.N.Y. 1999).
    44  See, generally, Eric S. Dreiband and Kristin M. Simonet, *Title VII of the Civil Rights Act of 1964 and Affirmative Action*, Pacific Coast Labor & Employment Conference (April 1, 2022).

plead that the Policies are non-remedial and seek racial-balancing for its own sake (a contention supported by the Motion's defense of the Policies by reference to the purported legality of other non-remedial "diversity" plans). The Courts of Appeals' consensus has long been that non-remedial "diversity" plans are unlawful.[45]

## C. Clear Inapplicability of Cited Exculpation Provision

### 1.    Facial Relationship of Plead Facts and Quoted Provision

The Individual Defendants argue that Starbucks' corporate exculpation clause precludes their personal liability on claims 5-7.[46] Right on the face of the quoted exculpation provision, they are clearly wrong.

As the Individual Defendants put it, the clause "immunize[s] directors from personal liability for actions undertaken in their official capacities unless their actions constitute 'intentional misconduct' or a 'knowing violation of law.'"

Although they will surely deny it, that is precisely what the Plaintiff has plead throughout its live complaint. In Paragraph 127, the Plaintiff has plead that "[s]ome or all of the [Individual Defendants] knew or should have known that the Policies

---

[45] E.g., *Taxman v. Board of Educ. of the Township of Piscataway*, 91 F.3d 1547, 1558 (3d Cir. 1996). See also the line of cases concluding that they were compelled to hold to hold that "diversity" programs violated Title VII by *Grutter v. Bollinger*, 539 U.S. 306 (2003): *Alexander v. City of Milwaukee*, 474 F.3d 437 (7th Cir. 2007); *Lomack v. City of Newark*, 463 F.3d 303 (3d Cir. 2006); *Kohlbeck v. City of Omaha*, 447 F.3d 552 (8th Cir. 2006); *Dean v. City of Shreveport*, 438 F.3d 448 (5th Cir 2006); *Biondo v. City of Chicago*, (7th Cir. 2004); and *Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir 2003). *C.f.*, *Ricci v. DeStefano*, 557 U.S. 557 (2009) (holding that "race-based" employment decision "is impermissible under Title VII unless the employer can demonstrate a strong basis in evidence that, had it not taken the action, it would have been liable under the disparate-impact statute.") and *U.S. v. Brennan*, 650 F.3d 65 (2nd Cir. 2011) (invalidating a consent order imposing a "diversity plan" to resolve a Title VII disparate impact claim on the basis that defendant lacked "a strong basis in evidence that the race- or gender-conscious action taken by the employer is *necessary* to avoid disparate-impact liability.").

[46] As with their arguments for the applicability of the business judgment rule, the Individual Defendants advance these arguments against Claims 5-8. However, as set out above (supra, note 28), Claim 8 seeks injunctive relief, rather than an assignment of personal liability. Accordingly, no exculpation provision *can* impact the propriety of Claim 8.

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 15

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

were illegal before they adopted and implemented the Policies." In paragraph 130, the Plaintiff has plead that "to the extent that any [of the Individual Defendants] lacked knowledge of the illegality of the Policies at their adoption and implementation (and managed to lack such knowledge without having breached their duty of due care by failing to inquire as to the legality of the Policies), every such [Individual Defendant] breached their duties of loyalty, good faith, and due care in *retaining* the policies after learning of their illegality. Every [Individual Defendant] had such knowledge by no later than their receipt of" the Plaintiff's "Demand Letter on March 31, 2022."

As the Plaintiff has plead the Individual Defendant's "intentional misconduct" and "knowing violation of law," at least at the stage of a 12(b)(6) motion, the Individual Defendant's contention that they are shielded from personal liability by Starbucks' exculpation clause is facially untenable.

## 2. Groundlessness and Irrelevance to a 12(b) Motion of Remaining Exculpation Arguments

The Individual Defendants try to further their argument for exculpation by muddying the waters with a variety of denials. They argue that "[u]p to the point of receiving Plaintiff's Demand … the Complaint does not allege that the Directors were *ever* informed by *anyone* that the [policies at issue] violated positive law." But the statutes at issue (Title VII, § 1981, and various states' non-discrimination statutes) are not obscure pieces of legislation. Indeed, the Motion re-emphasizes that, in 2018, Starbucks engaged Covington & Burling to assess the company's posted equal opportunity statements' compliance with precisely these statutes. By doing so,

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 16
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

the Motion makes precisely the same point plead by the Plaintiff in its live complaint – the Individual Defendants all knew or should have known of the illegality of the challenged programs, long before receiving the Plaintiff's demand. *However*, again as the Plaintiff has expressly plead, to the extent that any Individual Defendant *failed* to achieve such knowledge before receiving the Plaintiff's demand in March 2022, their retention of the challenged policies since are inescapably separate fiduciary breaches, made with knowledge of their illegality.[47]

The Individual Defendants nonetheless argue that they should be excused from this inescapable fact because their letter rejecting the Plaintiff's demand asserts that the Individual Defendants made a "review[ of] the 'current state of potentially applicable law'" and consulted with "management, outside counsel, and relevant subject matter experts." The suggestion appears, at first glance, to be that the Individual Defendants could not have knowingly continued to compel Starbucks to violate the law through retaining the challenged Policies, because of what those consulted authorities must have told them. But even here, the Individual Defendants hide the ball. The rejection letter, after all, fails to suggest that *any* of these "consulted" authorities told the Individual Defendants *anything different* than did the Plaintiff's demand letter. Neither the rejection letter, nor the Motion, *actually deny* the Individual Defendants' actual knowledge of the illegality of the challenged

---

[47] For the inescapable sufficiency of such post-notice breaches, see: *Garfield v. Allen*, 277 A.3d 296, 305-306 (Del. Ch. 2022) ("…the logic of the plaintiff's theory is sound: Delaware law treats a conscious failure to act as the equivalent of action, so if a plaintiff brings a clear violation to the directors' attention and they do not act, then it is reasonably conceivable that the directors' conscious inaction constitutes a breach of duty. The same logic animates a *Caremark* claim that rests on the theory that the board consciously ignored proverbial red flags, although the source of the notice that the board receives is different.").

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 17

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Policies. And *even if they did*, that denial would at most create a fact issue – at this 12(b)(6) stage of litigation, the Court would need to accept the truth of the Plaintiff's plead allegation that the Individual Defendants knowingly retained illegal policies ever since March 2022, rendering any such denial no basis for a dismissal.

Finally, the Individual Defendants argue that they can have no liability for Starbucks Title VII violations arising from the Individual Defendants' corporate inferiors' pursuit of the Individual Defendants' Policies. That is, of course, true. It is also irrelevant to the Individual Defendants' liability to the company and its shareholders for their breaches of their fiduciary duties through knowingly directing corporate violations of law. These are simply not the same claims, no matter how many times the Individual Defendants stamp their feet and insist that they are.

**D. Sufficiency of Allegations to Meet *Twombly* Standard**

The Individual Defendants also argue that this case should be dismissed, because the Plaintiff has allegedly failed "to allege that a single one" of the Individual Defendants "participated in the adoption or implementation" of the challenged policies. The assertion beggars belief.

As recited at the outset, *Twombly* requires a short and plain statement that provides defendants with notice of the claims being asserted, and supplies enough factual matter, taken as true, to suggest a violation. A complaint is "not require[d to include] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

The well-pled facts in the Plaintiff's live complaint, viewed in the light most favorable to the Plaintiff, meet that standard. No fair reading of the Plaintiff's live

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 18
*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

complaint could fail to infer that the Individual Defendants *who are directors* adopted the corporate policies at issue. No fair reading of the Plaintiff's live complaint could fail to infer that the Individual Defendants *who are officers* implemented the corporate policies at issue after the Individual Defendants *who are directors* adopted them. No fair reading of the Plaintiff's live complaint could fail to infer that both subsets of Individual Defendants retained the corporate policies at issue since their receipt of the Plaintiff's demand letter in March 2022.

Nonetheless, should the Court view greater detail on this score to be proper, the Plaintiff will gladly amend to identify with greater particularity precisely which Individual Defendants it alleges to have been involved in the adoption, implementation, and retention of each Policy. Similarly, should the Court view greater detail on this score to be proper, the Plaintiff will gladly amend to more clearly specify against which defendants it alleges each of its claims.

## IV. CONCLUSION

The Plaintiff asks the Court to deny the Motion's request for dismissal and to clarify what, if any, amendments to the Plaintiff's live complaint it deems proper, in an order requiring the Plaintiff to amend and provide a more definite statement within fourteen (14) days.

///

///

///

///

///

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS - 19

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  June 22, 2023.

2  | ARD LAW GROUP PLLC | -AND- |
3  | | THE AMERICAN CIVIL RIGHTS |
4  | By: _____ | PROJECT |
5  | Joel B. Ard, WSBA # 40104 | Daniel I. Morenoff, |
   | P.O. Box 11633 | *Admitted pro hac vice* |
   | Bainbridge Island, WA 98110 | P.O. Box 12207 |
6  | 206.701.9243 | Dallas, Texas 75225 |
   | Joel@Ard.law | (214) 504-1835 |
7  | | dan@americancivilrightsproject.org |

8
   Attorneys For Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

RESPONSE TO THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on June 22, 2023, I electronically filed the foregoing

3 Response to Individual Defendnats' Motion to Dismiss in *NCPPR v. Schultz*, No.

4 2:22-CV-00267-SAB(E.D. Wash.) with the Clerk of the Court using the CM/ECF

5 System, which in turn automatically generated a Notice of Electronic Filing (NEF)

6 to all parties in the case who are registered users of the CM/ECF system. The NEF

7 for the foregoing specifically identifies recipients of electronic notice.

8

9                          Ard Law Group PLLC

10

11

12      By:

13                          Joel B. Ard, WSBA # 40104
                            P.O. Box 11633
14                          Bainbridge Island, WA 98110
                            206.701.9243
15                          Joel@Ard.law

16 Attorneys for Plaintiff

17

18

19

20

21

22

23

CERTIFICATE OF SERVICE

*NCPPR V. SCHULTZ ET AL.*

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243